**FILMTEC CORPORATION,**
**Plaintiff–Appellee,**

v.

**HYDRANAUTICS, Defendant–Appellant.**

**No. 94–1034.**

United States Court of Appeals,
Federal Circuit.

Oct. 12, 1995.

James R. Martin, Gibson, Dunn & Crutcher, Los Angeles, CA, argued for plaintiff-appellee. Bernd W. Sandt and Gary C. Cohn, The Dow Chemical Company, Midland, MI, were on the brief, for plaintiff-appellee.

Carl W. Schwarz, McDermott, Will & Emery, Washington, DC, argued for defendant-appellant. With him on the brief was Seth D. Greenstein.

Before NEWMAN, PLAGER, and CLEVENGER, Circuit Judges.

Circuit Judge NEWMAN filed a separate opinion in which she concurs in the judgment.

PLAGER, Circuit Judge.

This case addresses the tension between the rights of a patentee seeking a remedy and the rights of a competitor seeking recompense for litigation that is claimed to be anticompetitive and violative of the antitrust laws. The district court denied the alleged infringer's motion to amend its answer to a complaint of patent infringement. The amendment was for the purpose of adding a counterclaim for antitrust violations. The district court also denied a motion for restitution for losses caused by a wrongful injunction arising out of the original infringement suit. We *affirm*.

## BACKGROUND

This court has already told much of the rather tortuous story of the litigation surrounding this invention. *See FilmTec Corp. v. Hydranautics,* 982 F.2d 1546, 25 USPQ2d 1283 (Fed.Cir.1992), *cert. denied,* —— U.S. ——, 114 S.Ct. 85, 126 L.Ed.2d 53 (1993) (*FilmTec v. Hydranautics*); *see also FilmTec Corp. v. Allied–Signal, Inc.,* 939 F.2d 1568, 19 USPQ2d 1508 (Fed.Cir.1991) (*FilmTec v. Allied* ). We repeat only what is necessary to understand this phase of the litigation.

In 1977, an inventor named John Cadotte, working for a not-for-profit research corporation called Midwest Research Institute (MRI) on a government-funded project, invented a reverse osmosis membrane used for the desalinization of water.[1] Soon thereafter, Cadotte and others established a for-profit corporation, FilmTec, for the purpose of commercially manufacturing reverse osmosis membranes. Cadotte filed for a patent on his membrane, and assigned all his rights in his invention to FilmTec. United States Patent No. 4,277,344 (the '344 patent) issued to Cadotte.

Hydranautics, defendant-appellant in this case, competes with plaintiff-appellee FilmTec in manufacturing and selling reverse osmosis membranes. Another competitor is Allied–Signal, Inc. (Allied). FilmTec has sued, separately, both Hydranautics and Al-

---

1. Cadotte's membrane belongs to class of membranes that contains meta-phenylenediamine (MPD) and trimesoyl chloride (TMC) and are hence also known as MPD/TMC membranes.

lied for infringement of the '344 patent. It is necessary to describe the parallel litigation between FilmTec and Allied in order to appreciate fully the course of the litigation between FilmTec and Hydranautics.

FilmTec filed suit against Allied first, in April 1988. The suit, filed in the District Court for the District of Delaware, alleged that Allied's membranes infringed the '344 patent. FilmTec sought injunctive relief. The suit was subsequently transferred to the District Court for the Southern District of California. In its answer, Allied challenged FilmTec's ownership of the '344 patent. The district court issued a preliminary injunction ordering Allied to stop producing its allegedly infringing products pending the outcome of the patent litigation.

Allied appealed the preliminary injunction to this court. In July 1991 this court vacated the preliminary injunction and remanded the case for further proceedings. *FilmTec v. Allied,* 939 F.2d at 1569, 19 USPQ2d at 1509. Our remand instructed the trial court to look further at the question of whether ownership of the invention was ever in Cadotte. The answer to this question turned on whether FilmTec, as assignee of Cadotte, had acquired any rights in the '344 patent, a key factor in its entitlement to a preliminary injunction.

Meanwhile, in May 1990, shortly after the District Court had issued its preliminary injunction against Allied, FilmTec sued Hydranautics in the Southern District of California, alleging that Hydranautics' membrane also infringed the '344 patent. This case was placed before the same judge who was responsible for the proceedings between FilmTec and Allied. The judge bifurcated the trial of the issues of liability and damages, and in May 1991 conducted a bench trial on the liability issues. As part of its defense, Hydranautics, as did Allied, challenged whether FilmTec's title to the patent was fatally defective.

In August 1991, now having before it our remand in the Allied litigation, the district court in the Hydranautics case held that FilmTec had good title to the '344 patent, and enjoined Hydranautics from commercial activity that might infringe or induce infringement. In light of its finding that FilmTec had title to the '344 patent, the district court, in the litigation between FilmTec and Allied, reinstated the preliminary injunction barring Allied from manufacturing membranes covered by the '344 patent. Both Hydranautics and Allied appealed to this court.

In April 1992, while its case was on appeal here, Allied filed in the district court a separate complaint against FilmTec, alleging antitrust violations, specifically that FilmTec was fraudulently using the patent system to monopolize the market for such membranes. Allied also moved to consolidate its antitrust claim with the still pending patent infringement litigation against it, or, in the alternative, to amend its answer in that litigation to counterclaim violations of the antitrust laws.

FilmTec moved to dismiss Allied's antitrust complaint, arguing that Allied failed to state a claim on which relief could be granted because FilmTec was immune from antitrust liability on the basis of the *Noerr–Pennington* doctrine. *See Eastern R.R. Presidents Conf. v. Noerr Motor Freight, Inc.,* 365 U.S. 127, 81 S.Ct. 523, 5 L.Ed.2d 464 (1961) (*Noerr*); *United Mine Workers of America v. Pennington,* 381 U.S. 657, 85 S.Ct. 1585, 14 L.Ed.2d 626 (1965) (*Pennington* ). In August 1992 the district court denied FilmTec's motion to dismiss the antitrust claims, and granted Allied's motion to consolidate the antitrust and patent infringement litigations between FilmTec and Allied. The dispute between FilmTec and Allied was concluded eventually without further involvement by this court.

The appeal taken by Hydranautics from the adverse decision of August 1991 was decided by this court in December 1992. *FilmTec v. Hydranautics,* 982 F.2d 1546, 25 USPQ2d 1283. We held, for reasons related to Cadotte's employment at the time the invention was conceived and in light of governing federal statute, that title to the invention was and always had been in the United States, and that FilmTec was without standing to sue on the '344 patent.

Hydranautics then attempted to follow Allied's strategy in countersuing for antitrust

violations. In March 1993 Hydranautics filed in the district court an antitrust suit against FilmTec. Hydranautics' claim tracked that earlier filed by Allied. Again following Allied's strategy, Hydranautics moved in the alternative for leave to amend its answer in the infringement litigation in order to raise its antitrust claim as a counterclaim. (Hydranautics' proposal to consolidate its antitrust claim with that brought by Allied became moot when Allied and FilmTec settled.)

FilmTec responded by moving to dismiss the antitrust suit and arguing that the motion to amend by way of counterclaim in the pending patent litigation should be denied. With regard to the counterclaim, FilmTec argued that leave to amend should not be granted because the patent infringement litigation was immune from suit under the *Noerr–Pennington* doctrine, and because Hydranautics had unduly delayed before filing its motion to amend. With regard to the separate antitrust suit, FilmTec argued that, since Hydranautics' antitrust claims were compulsory counterclaims, Hydranautics was barred by Fed.R.Civ.P. 13(a) from bringing such claims at this stage in the litigation.

While these matters were pending before the trial judge, Hydranautics filed a motion seeking restitution for its monetary losses during the period the injunction against it, issued by the court in August 1991, was wrongfully in place, and for an injunction prohibiting FilmTec from enforcing all foreign patents based on the same invention. The claim regarding the foreign patents has since been settled, and is not further discussed.

In August 1993 the district court denied all of Hydranautics' motions and granted FilmTec's motion to dismiss the antitrust claim. The dismissal of the antitrust action is on appeal to the Ninth Circuit. Hydranautics appeals to this court from the district court's denial of leave to amend its answer in the patent infringement litigation, and of its denial of its motion for restitution.

## DISCUSSION

### I. The denial of leave to amend Hydranautics' answer.

■ Rule 15(a) of the Federal Rules of Civil Procedure provides that a party may amend the party's pleading once as a matter of course at any time before a responsive pleading is served. "Otherwise a party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires." Fed.R.Civ.P. 15(a). Determining whether to give leave of court requires an exercise of discretion by the trial court. The exercise of that discretion is of course not unfettered, and the rule itself makes clear that leave shall be freely given when justice so requires. Unless a procedural matter is importantly related to an area of this court's exclusive jurisdiction, as a matter of convenience for district judges we will usually be guided by the views of the circuit in which the trial court sits with regard to general procedural issues. *In re Innotron Diagnostics*, 800 F.2d 1077, 1080 n. 3, 231 USPQ 178, 180 n. 3 (Fed.Cir.1986); *Panduit Corp. v. All States Plastic Mfg. Co., Inc.*, 744 F.2d 1564, 223 USPQ 465 (Fed.Cir.1984). In this case, that is the Ninth Circuit.

■ In the Ninth Circuit, the denial of a motion to amend is reviewed for abuse of discretion. *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 186 (9th Cir.1987) (*Leighton*). The Ninth Circuit has made clear that "[i]n exercising its discretion, 'a court must be guided by the underlying purpose of Rule 15—to facilitate decision on the merits rather than on the pleadings or technicalities,'" *Leighton*, 833 F.2d at 186, quoting *United States v. Webb*, 655 F.2d 977, 979 (9th Cir. 1981).

■ The Ninth Circuit has articulated four concerns it brings to the review of a trial court's exercise of discretion regarding motions to amend a pleading. "These are: bad faith, undue delay, prejudice to the opposing party, and futility of amendment." *Leighton*, 833 F.2d at 186, citing *Loehr v. Ventura County Community College Dist.*, 743 F.2d 1310, 1319 (9th Cir.1984), and *Howey v. United States*, 481 F.2d 1187, 1190 (9th Cir.1973).

In his decision denying Hydranautics' motion to amend its answer, the trial judge did not address any of these concerns by name.

It is clear, however, that the court's focus was on the issue of undue delay. The trial judge stated that "the previous patent infringement case has been fully litigated, appealed and the mandate has been spread.... FRCP Rule 15 will not be extended without limit if the motion is brought after a claim has been fully litigated on the merits through appeal."

■ To evaluate whether a party has unduly delayed in seeking to amend, we must take into account the particular dilemma faced by a defendant in a patent infringement suit who wants to bring an antitrust claim against the patentee. The basic test, with refinements to be explained below, of whether the patentee's infringement action may constitute an antitrust violation is whether the patentee's suit is a sham, meaning whether it is objectively baseless. *Professional Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc.*, — U.S. —, 113 S.Ct. 1920, 123 L.Ed.2d 611, 26 USPQ2d 1641 (1993) (*PRE* ) (discussed *infra* ). Obviously, if the patentee is successful in his infringement action, his suit is not baseless, and it cannot be a sham. The converse is not true, however; just because the patentee loses, he does not lose his immunity from antitrust liability. Liability turns on whether the suit is a sham, that is, on the nature of and the underlying merits of the patentee's case.

If a defendant in its answer to the complaint in a patent infringement suit includes a counterclaim for antitrust violation, that pleading runs the risk of being without substantial basis in law or fact. The validity of the patent, including the manner in which the patent application was prosecuted, will bear directly on the question of whether the patentee's suit is a sham under the relevant legal test. Even though the facts necessary for that assessment typically may not be known until well into the litigation, that still does not eliminate the counterclaimant's responsibilities under Rule 11 and other rules related to abuse of the judicial process.

However, if the defendant files his answer and does not include an antitrust counterclaim, and learns only later of good grounds for such a counterclaim, he runs into the timing problem. If he is deemed to have waited too long he will be barred from filing his counterclaim, as Hydranautics was in this case.

Hydranautics knew early in its lawsuit with FilmTec that the question of FilmTec's title to the invention and its right to bring the infringement suit was at issue. Allied had raised the issue of FilmTec's title when it was sued by FilmTec in 1988, and in July 1991 this court had expressed serious reservations about FilmTec's ownership of the invention and the ensuing patent, serious enough to reverse the trial court's grant of a preliminary injunction in FilmTec's favor. *FilmTec v. Allied*, 939 F.2d at 1569, 19 USPQ2d at 1509.

On the other hand, the trial court in August 1991 had ruled squarely in FilmTec's favor regarding FilmTec's title to the patent, and until this court reversed that ruling in December 1992, an effort by Hydranautics to add an antitrust counterclaim in face of that ruling might have been viewed as frivolous. Hydranautics filed its motion to add the counterclaim three months after this court's decision was rendered.

As noted, the district court denied Hydranautics motion on grounds of undue delay. In assessing whether that denial was an abuse of discretion, it is instructive to look at the district court's comparable treatment of Allied's antitrust counterclaim. At the time Allied filed its motion to add its counterclaim in April 1992, the suit against it had been pending since 1988. The district court, in response to our July 1991 remand, ruled in August 1991 in favor of FilmTec on the question of ownership of the patent. Despite that, the district court denied FilmTec's motion to dismiss Allied's antitrust counterclaim when FilmTec filed its motion to dismiss in August 1992.

It is difficult to see why in 1992 Allied, at a time when it appeared that FilmTec might be a winner in its infringement suit, should be considered to have properly filed its claim that FilmTec's suit was a sham, while Hydranautics in 1993, following this court's ruling that FilmTec could not sue on its patent, is not. The trial judge's view that Hydranautics waited too long by waiting until this

court's decision on appeal had been announced seems inappropriate here. Until the appeal was decided, the question of whether FilmTec's suit could be deemed a sham was for all practical purposes foreclosed by the trial judge's ruling in FilmTec's favor.

■ That does not dispose of the matter, however. Even if the trial judge's stated grounds for denying the motion to add an antitrust counterclaim is insufficient, it is this court's duty to sustain the judgment if there are other grounds upon which it can be upheld. FilmTec argues that in the circumstances of this case, Hydranautics' motion to amend its answer was futile. FilmTec contends that Hydranautics' proposed suit under the antitrust laws could not have succeeded because FilmTec's patent litigation was immune from suit as a matter of law. FilmTec's argument requires explanation.

■ In general, an effort to influence the exercise of government power, even for the purpose of gaining an anticompetitive advantage, does not create liability under the antitrust laws. In *Noerr*, the Supreme Court held immune from antitrust liability a combination of rail freight interests which was formed in order to have legislation passed that would grant the members of the combination a competitive advantage over truckers. *Noerr*, 365 U.S. at 145, 81 S.Ct. at 533. The Supreme Court has read *Noerr* broadly: "*Noerr* shields from the Sherman Act a concerted effort to influence public officials regardless of intent or purpose." *Pennington*, 381 U.S. at 670, 85 S.Ct. at 1593. "Joint efforts to influence public officials do not violate the antitrust laws even though intended to eliminate competition." *Id.* The Supreme Court has applied the *Noerr–Pennington* doctrine to courts and administrative agencies. *California Motor Transport Co. v. Trucking Unlimited*, 404 U.S. 508, 510–11, 92 S.Ct. 609, 611–12, 30 L.Ed.2d 642 (1972) (*California Transport*). The *Noerr–Pennington* doctrine thus protects those who attempt to use the power of government organs, including the judiciary, to further private ends.

■ There is an important exception: the *Noerr–Pennington* doctrine does not protect

litigation from suit under the antitrust laws if the litigation is a "sham." The Supreme Court in *Noerr* recognized that if an action "ostensibly directed toward influencing governmental action, is a mere sham to cover what is actually nothing more than an attempt to interfere directly with the business relationships of a competitor [then] the application of the Sherman Act would be justified." *Noerr*, 365 U.S. at 144, 81 S.Ct. at 533. *See also California Transport*, 404 U.S. at 511–16, 92 S.Ct. at 612–15 (remanding for determination of whether the sham exception to the general immunity from the antitrust laws applied). ❦

■ So the question is whether or not FilmTec's infringement litigation could be characterized as a sham. The Supreme Court has recently provided a two-tiered definition of sham litigation.

> First, the lawsuit must be objectively baseless in the sense that no reasonable litigant could realistically expect success on the merits. If an objective litigant could conclude that the suit is reasonably calculated to elicit a favorable outcome, the suit is immunized under *Noerr*, and an antitrust claim premised on the sham exception must fail.

*PRE*, —— U.S. at ——, 113 S.Ct. at 1928, 26 USPQ2d at 1646 (footnote omitted). The second tier, to be reached "only if challenged litigation is objectively meritless," *id.*, is "whether the baseless lawsuit conceals an attempt to interfere *directly* with the business relationships of a competitor through the use of the governmental *process*—as opposed to the *outcome* of that process—as an anticompetitive weapon." *Id.*, —— U.S. at ——, 113 S.Ct. at 1928, 26 USPQ2d at 1646 (emphasis in original) (citations omitted).

The first question is thus whether FilmTec's patent infringement suit was objectively baseless. The actual outcome of that suit, although instructive, is not determinative: "The court hearing the antitrust claim must make its own assessment of the objective merits of the predicate suit. . . ." *Boulware v. Nevada Dep't of Human Resources*, 960 F.2d 793, 799 (9th Cir.1992) (*Boulware*). Had FilmTec ultimately prevailed in its infringement suit, Hydranautics would have a

difficult time establishing that FilmTec's suit was a sham. FilmTec would therefore enjoy *Noerr–Pennington* immunity, even if its sole purpose in bringing suit was monopolization of the market. *See PRE*, —— U.S. at —— n. 5, 113 S.Ct. at 1928 n. 5, 26 USPQ2d at 1646 n. 5. But FilmTec lost, which complicates the analysis.

On the one hand, the Supreme Court has cautioned that "when the antitrust defendant has lost the underlying litigation, a court must resist the understandable temptation to engage in *post hoc* reasoning by concluding that an ultimately unsuccessful action must have been unreasonable or without foundation." *Id.* (citations omitted). On the other hand, a preliminary success on the merits does not necessarily preclude a court from concluding that litigation was baseless. *See Boulware*, 960 F.2d at 798–99.

█ The facts of this case have been established by prior litigations, and are therefore law of the case. Because there is no dispute over the facts, the question of whether or not a cause of action is reasonable or an abuse of process is a question of law. *See PRE*, —— U.S. at ——, 113 S.Ct. at 1930, 26 USPQ2d at 1647 ("Where, as here, there is no dispute over the predicate facts of the underlying legal proceeding, a court may decide probable cause as a matter of law.") (citations omitted). We review questions of law without deference to the trial forum.

█ As noted, the litigation history of the '344 patent is long. This court has considered title to the patent on two occasions. In the first case, Allied appealed the district court's grant of a preliminary injunction. Due to the state of the record, we confessed that "we do not know who held legal title to the invention and to the patent application". *FilmTec v. Allied*, 939 F.2d at 1573, 19 USPQ2d at 1512. Nonetheless, we made it known that we had "a serious question about the nature of the title, if any, in FilmTec." *Id.*, 939 F.2d at 1571–72, 19 USPQ2d at 1511. Confronting only the issue then before us, we concluded that "[i]n our view of the title issue, it cannot be said on this record that FilmTec has established a reasonable likelihood of success on the merits." *Id.*, 939 F.2d 1574, 19 USPQ2d at 1513.

Subsequently, in *FilmTec v. Hydranautics*, 982 F.2d 1546, 25 USPQ2d 1283, this court was squarely confronted with the question of whether FilmTec had title to the '344 patent. As a matter of statute and contract, we concluded that if the invention was conceived while Cadotte was at MRI, then FilmTec did not have title. Only if Cadotte conceived the membrane after he left MRI could FilmTec's title be sound. Thus the issue before the court was "whether the invention of the '344 patent was made or conceived while Cadotte was at MRI...." *Id.*, 982 F.2d at 1550, 25 USPQ2d at 1287.

While he was at MRI, Cadotte had discovered a reverse osmosis membrane with essentially the same chemical composition as that claimed by the '344 patent. At MRI, however, the performance of Cadotte's reverse osmosis membrane differed somewhat from the performance Cadotte ultimately claimed in the '344 patent. FilmTec argued that this difference in performance made the MRI membrane a different invention from that covered by the '344 patent. This court disagreed: we held that the plain language of statute and contract assigned all rights in inventions conceived at MRI to the government, and Cadotte had conceived the membrane while he was at MRI.

As noted, the Supreme Court has forbidden us to equate loss on the merits with objective unreasonableness. The Court requires an inquiry into the reasonableness of the antitrust defendant's litigation when filed. "[S]ham litigation must constitute the pursuit of claims so baseless that no reasonable litigant could realistically expect to secure favorable relief." *PRE*, —— U.S. at ——, 113 S.Ct. at 1929, 26 USPQ2d at 1647. Conversely, "[t]he existence of probable cause to institute legal proceedings precludes a finding that an antitrust defendant has engaged in sham litigation." *Id.*

Although the question is not without some doubt, we conclude that, taking all of the facts and circumstances into account, it cannot be said that FilmTec's suit against Hydranautics was objectively baseless. The issues on which this litigation hinged, precisely what Cadotte invented, and when, were gen-

uine. On the basis of its understanding of those issues, FilmTec, not without reason, staked a claim to owning the '344 patent as Cadotte's assignee. The trial judge, after full consideration, ruled for FilmTec on this issue. Although that is not controlling, and indeed we found it to be erroneous, it does support the conclusion that FilmTec's theory was more than a sham. In this light, and in view of all that has transpired in the case, allowing Hydranautics to amend its answer by adding an antitrust counterclaim would be a futile act; the decision of the trial court in denying the motion to amend is affirmed.[2]

## II. Restitution.

After its final success on the merits, Hydranautics moved for an order awarding restitution for the wrongful injunction. Hydranautics argued that FilmTec had been unjustly enriched by the injunction that prohibited Hydranautics from making reverse osmosis membranes. The district court found restitution to be unavailable for three reasons. First, Hydranautics transferred no property to FilmTec pursuant to the injunction. Second, the district court stated that, until this court held otherwise, FilmTec was considered to be the owner of the '344 patent. Third, the district court was of the view that Hydranautics was not due restitution for whatever business losses it suffered during the pendency of the injunction, since these were more properly considered as damages. The district court denied Hydranautics' motion for restitution, and Hydranautics appeals.

We assume, without deciding, that the first ground cited by the district court would not prevent a litigant, as a matter of law, from recovering restitution upon a proper showing. *See Arkadelphia Milling Co. v. St. Louis S.W. Ry. Co.*, 249 U.S. 134, 145, 39 S.Ct. 237, 241–42, 63 L.Ed. 517 (1919); *Balti-*

*more & Ohio R.R. v. United States*, 279 U.S. 781, 785–86, 49 S.Ct. 492, 493, 73 L.Ed. 954 (1929); *Maryland Dep't of Human Resources v. United States Dep't of Agriculture*, 976 F.2d 1462, 1482–83 & n. 19 (4th Cir.1992); *National Kidney Patients Ass'n v. Sullivan*, 958 F.2d 1127, 1136–37 (D.C.Cir. 1992); *accord Iconco v. Jensen Constr. Co.*, 622 F.2d 1291 (8th Cir.1980); *Connelly Containers, Inc. v. Bernard*, 717 F.Supp. 202, 210 (S.D.N.Y.1989). *But cf. Greenwood County v. Duke Power Co.*, 107 F.2d 484, 487–88 (4th Cir.1939), *cert. denied*, 309 U.S. 667, 60 S.Ct. 608, 84 L.Ed. 1014 (1940); *United Motors Service, Inc. v. Tropic–Aire, Inc.*, 57 F.2d 479, 483–84, 12 USPQ 412, 416 (8th Cir.1932).

■ Nor would the the second ground cited—that FilmTec was the owner of the '344 patent—support a denial of a restitutionary remedy. The district court considered that FilmTec owned the '344 patent until this court, reversing the district court, held that the United States owned the patent. That is not correct. With regard to the patent in suit, FilmTec never possessed any rights in the '344 patent that were enforceable against Hydranautics. As this court previously held,

> when the invention was conceived by Cadotte, title to that invention immediately vested in the United States by operation of law. He had no right to assign it to FilmTec; the statute had divested him of all of his interest.

*FilmTec v. Hydranautics*, 982 F.2d at 1553, 25 USPQ2d at 1290.

■ The district court's third ground for denying restitution was that Hydranautics had not made the requisite showing for such recovery, and that Hydranautics effectively sought damages for its alleged loss of business to FilmTec while the injunction was in

---

**2.** In light of our holding that FilmTec's patent infringement suit was not objectively baseless, we need not decide whether FilmTec's suit was in bad faith or otherwise motivated by anticompetitive intent. *See Loctite Corp. v. Ultraseal Ltd.*, 781 F.2d 861, 228 USPQ 90 (Fed.Cir.1985). Nor need we decide whether *Noerr–Pennington* immunity is vitiated by fraud on the patent office. *See Walker Process Equip., Inc. v. Food Machinery & Chem. Corp.*, 382 U.S. 172, 86 S.Ct. 347, 15

L.Ed.2d 247, 147 USPQ 404 (1965). Thus, we again avoid determining what effect *PRE* has had on *Walker Process* and its progeny. *See Carroll Touch, Inc. v. Electro Mechanical Sys., Inc.*, 15 F.3d 1573, 1583 n. 10, 27 USPQ2d 1836, 1845 n. 10 (Fed.Cir.1993); James B. Kobak, Jr. "Professional Real Estate Investors and the Future of Patent–Antitrust Litigation: *Walker Process* and *Handgards* Meet *Noerr–Pennington*," 63 Antitrust L.J. 185 (1994).

place. The district court recognized that the remedy of restitution is not a substitute for an action in damages, and concluded that restitution was unavailable in this case based on the court's broad familiarity with the evidence in both the Hydranautics and Allied Signal litigation, including evidence concerning the nature of the parties' products and the market for them. Moreover, although Hydranautics was denied a stay of injunction pending appeal by the district court, Hydranautics did not pursue a stay before this court. See Fed.R.Civ.P. 62(g); Fed.R.App.P. 8(a)–(b). Under these circumstances, and on the record before us, we cannot say that the district court clearly erred in disallowing restitution in this case. We therefore affirm the district court's denial of Hydranautics' Motion for Restitution.

## CONCLUSION

The order of the district court that denied Hydranautics leave to amend its answer to assert violations of the antitrust laws, and denied Hydranautics' Motion for Restitution, is affirmed.

**AFFIRMED**

NEWMAN, Circuit Judge, concurring in the judgment.

I concur in the affirmance of the district court's judgment, although I do not share the majority's reasoning.

On the issue of restitution, the district court correctly observed that there was no transfer of money or property from Hydranautics to FilmTec after the judgment in favor of FilmTec, and that Hydranautics' requested recovery is simply a request for damages during the period between trial and appeal. The unavailability of damages for this period reflects longstanding practice and policy. The railroad and utility rate cases wherein overcharges were restored to the customers, viz. Arkadelphia Milling Co. v. St. Louis S.W. Ry. Co., 249 U.S. 134, 39 S.Ct. 237, 63 L.Ed. 517 (1919) and Baltimore & Ohio Ry. Co. v. United States, 279 U.S. 781, 49 S.Ct. 492, 73 L.Ed. 954 (1929), and cases wherein government agencies recovered overpayments based on statute or regulation, viz. Maryland Dep't of Human Resources v. United States Dep't of Agriculture, 976 F.2d 1462 (4th Cir.1992) and National Kidney Patients Ass'n v. Sullivan, 958 F.2d 1127 (D.C.Cir.1992), cert. denied, —— U.S. ——, 113 S.Ct. 966, 122 L.Ed.2d 122 (1993), are not authority, even in dictum, for recovery of losses of the nature of damages resulting from the decision at trial.

Restitution is a standard remedy for breach of contract and for the return of specific property and monies paid. The district court correctly held that Hydranautics' business losses during the period between trial and appeal are not directly recoverable as damages and thus are not indirectly recoverable in the guise of restitution. This implements the longstanding rule, as stated in Russell v. Farley, 105 U.S. 433, 26 L.Ed. 1060 (1881), that "[w]here no bond or undertaking has been required, it is clear that the court has no power to award damages sustained by either party in consequence of the litigation, except by making such a decree in reference to the costs of the suit as it may deem equitable and just." See Restatement of Restitution § 74 (1937) and Comment a. This practice reflects the policy that legitimate business activity upon favorable judgment is not a wrong. As Lord Mansfield put it, restitution "lies for money paid by mistake; or upon a consideration which happens to fail; or for money got through imposition (express or implied); or extortion; or oppression; or an undue advantage taken of the plaintiff's situation, contrary to the laws made for the protection of persons under those circumstances." Moses v. McFerlan, 97 Eng.Rep. 676, 681 (K.B.1760), cited in Richard A. Epstein, The Ubiquity of the Benefit Principle, 67 S.Cal.L.Rev. 1369, 1370 & n. 6 (1994).

I would affirm the district court's holding, not on the ground of absence of clear error, but as a matter of correct understanding and application of the law.