NEWMAN, Circuit Judge,
dissenting.
With its reversal of the district court’s summary judgment dismissing Mutual’s antitrust counterclaims, this court now creates several new grounds of antitrust liability. The panel majority holds that antitrust issues are raised by Tyco’s Hatch-Waxman suit, although the suit is for infringement of presumptively valid patents asserted against a product whose ANDA and Paragraph IV Certification constituted *1351 a technical act of infringement under 35 U.S.C. § 271(e). The constitutional right to petition government, as well as the patent right to exclude, does not dissipate between competitors.
My colleagues search for a Sherman Act violation in the evidence concerning how surface area measurement is affected by outgassing temperature. Such an issue does not convert routine patent litigation into an antitrust cause. And by remanding for determination of antitrust injury based on Tyco’s report to the FDA, this court holds that such communication can violate antitrust law.
Tyco’s Hatch-Waxman litigation and Tyco’s report to the FDA are in accordance with law and the Constitution. They do not raise Sherman Act issues. From the court’s conversion of routine patent litigation into antitrust violation, I respectfully dissent.
Discussion
The district court correctly held that this case did not raise antitrust issues, and summarily dismissed Mutual’s antitrust counterclaims. Although Tyco lost on the merits, its Hatch-Waxman suit was not “sham.” Enforcement of a presumptively valid patent against a product that infringes by statute cannot be deemed objectively baseless. The district court held that the criteria were not met, criteria whereby litigation is deemed “sham” when “ ‘no reasonable litigant could realistically expect success on the merits’ ” and there was no “probable cause to initiate suit.” Tyco Healthcare Grp. LP v. Mutual Pharm. Co., No. 2:07-cv-1299, slip op. at 5, 6 (D.N.J. Jan. 18, 2013) (quoting and citing Prof'l Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc. [hereinafter PRE], 508 U.S. 49, 60-62, 113 S.Ct. 1920, 123 L.Ed.2d 611 (1993)).
The filing of a Paragraph TV Certification with an Abbreviated New Drug Application (ANDA) in and of itself constitutes probable cause to initiate suit, see id., for the Hatch-Waxman statute authorizes the filing of an infringement suit in response to a Paragraph IV filing. It is also plain that Tyco had the right to communicate with the FDA concerning public information on matters within the agency’s authority and responsibility without incurring antitrust liability.
The panel majority inserts a strong antitrust presence into routine patent litigation, adding the potential of antitrust penalties for patent enforcement. Recently the Supreme Court reviewed a case where this court imported antitrust criteria into patent litigation, in the context of attorney fee awards under 35 U.S.C. § 285; the Court explained the antitrust view of “sham” litigation:
We crafted the Noerr-Pennington doctrine — and carved out only a narrow exception for “sham” litigation — to avoid chilling the exercise of the First Amendment right to petition the government for the redress of grievances. But to the extent that patent suits are similarly protected as acts of petitioning, it is not clear why the shifting of fees in an “exceptional” case would diminish that right.
Octane Fitness, LLC v. ICON Health & Fitness, Inc., — U.S. -, 134 S.Ct. 1749, 1757-58, 188 L.Ed.2d 816 (2014). The Court referred to the chilling effect of the threat of antitrust liability:
The threat of antitrust liability (and the attendant treble damages, 15 U.S.C. § 15) far more significantly chills the exercise of the right to petition than does the mere shifting of attorney’s fees. In the Noerr-Pennington context, defendants seek immunity from a judicial declaration that their filing of a lawsuit *1352 was actually unlawful; here, they seek immunity from a far less onerous declaration that they should bear the costs of that lawsuit in exceptional cases.
Id. My colleagues again intermingle antitrust and patent issues, distorting the balance stated in Simpson v. Union Oil Co., of California, 377 U.S. 13, 24, 84 S.Ct. 1051, 12 L.Ed.2d 98 (1964), that the patent laws “are in pari materia with the antitrust laws and modify them pro tanto.” The panel majority improperly inserts antitrust issues into the issues of infringement, validity, and communication to the government, contravening precedent and the Constitution.
A. Infringement
Tyco filed this Hatch-Waxman suit in response to Mutual’s Paragraph IV Certification for its generic counterpart to Tyco’s patented drug Restoril®. The district court granted summary judgment on the antitrust counterclaims, applying the Court’s exhortation to “ ‘resist the understandable temptation to engage in post hoc reasoning by concluding that an ultimately unsuccessful action must have been unreasonable or without foundation.’ ” Tyco, No. 2:07-cv-1299, slip op. at 8 (quoting PRE, 508 U.S. at 60 n. 5, 113 S.Ct. 1920).
The basis for Tyco’s infringement suit was Mutual’s challenge to Tyco’s patents in accordance with the Hatch-Waxman Act. The panel majority acknowledges that “[t]he parties do not dispute that the specific surface area of Mutual’s temazepam falls within the infringing range when the outgassing temperature is set at 105°C.” Maj. Op. at 1345. Nonetheless, the majority revives the antitrust counterclaim that the infringement suit was “objectively baseless,” and remands for “further inquiry ... into the effect of the outgassing temperature on the specific surface area of Mutual’s generic product.” Id. at 1345. The panel majority orders the district court to make findings, if need be with additional trial proceedings, stating that this information is needed for the court to determine whether this Hatch-Waxman suit violates antitrust law as “sham” litigation. Id.
The purpose of this remand is not to elucidate the question of infringement, for that issue was finally resolved. Instead, my colleagues seek new findings and authorize further trial, now to provide evidence of antitrust violation. While the difference in the measured surface area was the basis for the district court’s holding of non-infringement, the role of out-gassing temperature in surface area measurement is not antitrust fodder. Here, Mutual is seeking ANDA approval for a product that is required to be identical to Tyco’s FDA-approved product in order to rely on that product’s data of safety and efficacy. The panel majority focuses on asserted “sham” litigation in its antitrust “inquiry into whether Tyco’s § 271(e)(2)(A) infringement claim was objectively baseless.” Id. at 1345. However, on Mutual’s representation that its product meets the ANDA requirements, accompanied by a Paragraph IV Certification challenging Tyco’s patent, a Hatch-Waxman infringement suit in accordance with § 271(e)(2)(A) is not “sham.” The district court correctly so held.
The panel majority’s curiosity as to the scientific effect of changes in outgassing temperature on the measurement of surface area is neither appropriate appellate process, nor a matter for invoking the Sherman Act. See PRE, 508 U.S. at 62, 113 S.Ct. 1920 (“The existence of probable cause to institute legal proceedings precludes a finding that an antitrust defendant has engaged in sham litigation.”). As this court reiterated in FilmTec Corp. v. Hydranautics, 67 F.3d 931, 938 (Fed.Cir. *1353 1995), “[t]he [Supreme] Court requires an inquiry into the reasonableness of the antitrust defendant’s litigation when filed.” Despite clear precedent that any question of “sham” litigation is decided as of when the complaint is filed, the panel majority remands for trial and possibly new evidence that might support the majority’s argument that Tyco misunderstood the role of temperature in outgassing, and that this is evidence of antitrust violation in the filing of this Hatch-Waxman suit.
This court errs in converting this routine patent infringement case into an antitrust cause.
B. Validity
Mutual also argued in the district court that Tyco should have known that it would not succeed in defending the validity of its patents. The district court correctly dismissed this argument. Tyco, No. 2:07-cv-1299, slip op. at 9. The presumption of validity of a duly granted patent negates ruling that the routine defense of a patent’s validity constitutes “sham” litigation.
. Although the panel majority recites the presumption of validity and the placement of the burden of proof, the majority introduces a new concept of antitrust liability. The majority now creates a “burden of production” whereby the patent owner must come forward with affirmative evidence of validity, such as of “teaching away” or “unexpected results” or “other pertinent secondary considerations,” whereby if this burden of production is not met with “an argument that is not objectively baseless” then the patentee becomes a violator of antitrust law. Maj. Op. at 1346.
Thus the panel majority creates another new antitrust dimension of patent litigation, whereby failure to meet some general “burden of production” converts the defense of one’s patent into a ground of antitrust liability. Although the panel majority finds that in this case Tyco’s “teaching away argument was not objectively baseless, nor does Mutual suggest on appeal that it was,” id. at 1346, the majority’s premise is that if this criterion were not met, Tyco could have violated the Sherman Act.
Although this unprecedented new ground of antitrust liability is not clearly developed, the implication is only too clear. This court holds that a patentee’s validity arguments are subject to routine consideration not only for their effect on the validity debate, but for their strength on Sherman Act criteria. Heretofore, patent validity was not of antitrust interest unless the patent was obtained by fraud. Walker Process Equip., Inc. v. Food Mach. & Chem. Corp., 382 U.S. 172, 86 S.Ct. 347, 15 L.Ed.2d 247 (1965). The district court referred to “the presumption of validity of an issued patent” and held that the Tyco patents were not obtained by fraud. Tyco, No. 2:07-cv-1299, slip op. at 9, 12. The court held that the Sherman Act was not here invoked.
The panel majority now transplants the antitrust criteria of “sham” litigation as set forth in PRE into routine patent validity litigation, adding a de facto adverse inference if the patentee chooses to rely on the presumption of validity and does not meet my colleagues’ newly contrived antitrust standard of “burden of production.” Maj. Op. at 1346. My colleagues again import the “chilling effect” of antitrust litigation, Octane Fitness, 134 S.Ct. at 1757, into routine patent debates.
This further insertion of antitrust issues into patent cases is as unnecessary as the court’s reasoning is unclear. The only thing that is clear is that it will be the rare patent suit that will not include assertions of Sherman Act violation patterned on the *1354 court’s theories today. So dramatic an enlargement of patent litigation should not be casually made, even in dictum.
C. The Citizen Petition
After Tyco lost its infringement case, it informed the FDA of Mutual’s successful position that the generic product is not the same as the Tyco patented product. Tyco proposed to the FDA that additional tests should be required of Mutual’s assertedly different product, and that Mutual should not be permitted to rely on data for the Tyco product.
Mutual’s counterclaim charged that Tyco’s communication to the FDA violated the antitrust laws. My colleagues- state that “a reasonable finder of fact could conclude that Tyco’s citizen petition was objectively baseless,” Maj. Op. at 1347-48, and remand to the district court for determination of antitrust injury. The panel majority misstates that the Tyco petition is “seeking to bar Mutual from obtaining FDA permission to market its generic version of one of Tyco’s drugs.” Id. at 1340. The petition communicated to the FDA the public information that the Mutual generic product is not the same as the FDA-approved Tyco product. An accurate communication cannot be an antitrust violation, even if it relates to competitors, as firmly established by Noerr-Pennington.
Nonetheless, this court remands for determination of antitrust injury flowing from the filing of this .petition, an action effectively requiring the predicate determination of violation of antitrust law.[1] Id. at 1348 (“On remand, the district court should determine whether Mutual suffered an anticompetitive harm in the form of a delay in the approval of its ANDA due to the filing of Tyco’s citizen petition with the FDA.”). Antitrust violation is a prerequisite to determination of antitrust injury. See, e.g., J. Truett Payne Co., Inc. v. Chrysler Motors Corp., 451 U.S. 557, 568, 101 S.Ct. 1923, 68 L.Ed.2d 442 (1981) (“If the court determines on remand that respondent did violate the [antitrust statute], the court should then consider the sufficiency of petitioner’s evidence of injury in light of the cases discussed above.”).
No antitrust law was violated by Tyco’s communication to the FDA. The FDA is charged with establishing and securing drug safety and efficacy, for a new drug and for its generic counterparts. There can be no doubt as to a citizen’s right to communicate with the government on matters of concern. “The right of petition is one of the freedoms protected by the Bill of Rights, and we cannot, of course, lightly impute to Congress an intent to invade these freedoms.” E. R.R. Presidents Conference v. Noerr Motor Freight, 365 U.S. 127, 138, 81 S.Ct. 523, 5 L.Ed.2d 464 (1961). Such right is not eliminated when the petitioner is in a competitive relationship.
The majority protests that it is not finding antitrust liability for Tyco’s petition, but only that “Mutual’s evidence was sufficient to withstand Tyco’s motion for summary judgment.” Maj. Op. at 1349 n. 1. It is plain that Tyco had the right to commu *1355 nicate with the FDA concerning this matter within the agency’s authority and responsibility. The majority’s remand for determination of antitrust injury is necessarily premised on the position that the communication was contrary to antitrust law. Id. at 1348 (“There remains an open issue, however, as to whether the filing of the citizen petition caused any antitrust injury to Mutual.”).
The Court has reminded that “[t]hose who petition government for redress are generally immune from antitrust liability,” PRE, 508 U.S. at 56, 113 S.Ct. 1920, although competitors may be affected, see Noerr Motor Freight, 365 U.S. at 139, 81 S.Ct. 523; United Mine Workers v. Pennington, 381 U.S. 657, 669, 85 S.Ct. 1585, 14 L.Ed.2d 626 (1965). My colleagues offer the archetype for failing to “avoid chilling the exercise of the First Amendment right to petition the government for redress of grievances” with the imposition of this antitrust liability. Cf. Octane Fitness, 134 S.Ct. at 1757.
CONCLUSION
The intrusion of antitrust issues into routine patent cases has been controlled in precedent. See FilmTec, 67 F.3d at 938 (“As noted, the Supreme Court has forbidden us to equate loss on the merits with objective unreasonableness.”). My colleagues now hold otherwise, although the nation’s history of innovation has been built on the balanced foundation that:
The patent and antitrust laws are complementary, the patent system serving to encourage invention and the bringing of new products to market by adjusting investment-based risk, and the antitrust laws serving to foster industrial competition.
Intergraph Corp. v. Intel Corp., 195 F.3d 1346, 1362 (Fed.Cir.1999).
The court’s rulings today are contrary to law, precedent, and the Constitution. I respectfully dissent.

. The panel majority, responding to this dissent, protests that it has not ruled that Tyco's filing of the citizen petition is "effectively” an antitrust violation, even as the majority remands for determination of antitrust injury. The law is clear that antitrust violation must exist before consideration of antitrust injury becomes applicable. See, Atl. Richfield Co. v. USA Petrol. Co., 495 U.S. 328, 342, 110 S.Ct. 1884, 109 L.Ed.2d 333 (1990) ("The purpose of the antitrust injury requirement.... ensures that the harm claimed by the plaintiff corresponds to the rationale for finding a violation of the antitrust laws in the first place....”). Thus my colleagues "effectively” find antitrust violation in remanding for determination of antitrust injury.