Nott, J.,
delivered the following opinion:
In the case of Burns (12 Wall., 246) the Supreme Court said :■ “ If an officer in the military service, not specially employed to make experiments with a view to suggest improvements, devises a new and valuable improvement in arms, tents, or any other kind of war material, he is entitled to the benefit of it.”
The alternative which the Supreme Court suggested seems to be presented by the present case. Here an officer of the Government in the civil service was “ specially employed to make experiments with a view to suggest improvements ” in a revenue tax stamp which the Government was to manufacture as well as use; and he moreover was not only specially employed, to make these experiments, but he made them in the Gov *483 ernment’s Bureau of Engraving and Printing, of which he was-the chief, and with the tools, implements, machinery, and material of his employers. In other words, the work of the invention was prosecuted and completed exclusively at the cost of the United States.
Can such an officer maintain an action for royalty on the very patent which in the course of his official duty he devised ?
In answering this question I put aside the English doctrine of the right of the Crown to the user of a patented device, and deal with it entirely upon the assumption that a patent right is property, and that the Government can take no kind of property lor public use except under the constitutional condition of making just compensation.
This new form of property, the mind-work of the inventor, though its constitutional existence is now well nigh a century old, is still a novelty in the law. The wisdom of the common law gives neither maxims nor precedents to guide, and the American cases which deal with it, though numerous enough, run in a narrow, statutory groove. Though the most intangible form of property, it still, in many characteristics, is closer in analogy to real than to personal estate. Unlike personal property, it cannot be lost or found; it is not liable to casualty or destruction; it cannot pass by manual delivery. Like real property, it may be disposed of, territorially, by metes or bounds; it has its system of conveyancing by deed and registration ; estates may be created in it, such as for years and in remainder; and the statutory action for infringement bears a. much closer relation to an action of trespass than to an action in trover and replevin. It has, too, what the law of real property has, a system of user by license.
“A license is an authority to do a particular act, or series of acts, upon the land of another, without possessing an estate therein. When executed it will prevent the owner of the land from maintaining an action for the acts done under it; but it. is revocable at pleasure, and will not be a defense for an act done after revocation. A consideration may have been given for it, or expenditures made strictly on the faith of it, yet the-owner of the land may revoke it when he will (unless it be coupled with an interest) without paying back the money or-making compensation for the expenditure.’’ (Morgan & Rhinehart, 14 C. Cls. R., 319, 327.)
In this case I am of the opinion that there was a license- *484 which, whether coupled with an interest or not, has never been -revoked. This license was founded on the defendants employing their own agent at his solicitation to devise the stamp, on their bearing the cost of the invention, on tlieir running the risk of its worthlessness, and on their making an enormous •outlay of cost and preparation, with the knowledge and concurrence of the agent, to ingraft the invention upon a revenue system which must necessarily be a matter of years. The license so granted may not have passed to the United States a specific interest in .the patent, nor a monopoly thereof, nor a right to share in its profits, nor to exclude other licensees from the use • of it, nor to maintain an action against any one for an infringe-nnent; and yet, as a license to enter upon real property will •.negative the presumption of trespass and preclude the owner from maintaining an action for acts done under it, so this license negatives the presumption of an implied contract, and precludes (he claimant from maintaining an action for a royalty which the defendants in no legal sense could ever have agreed to pay.
. I am aware that a letter was sent by the claimant to the Secretary of the Treasury concerning the matter of compensation. But the claimant was not a purchaser in good faith for a valuable consideration and without notice, who could assert a •higher equity than his grantor. He took the assignment with knowledge of and subject to the license. Amid the circumstances of the case, he, as the representative of the inventor, was bound, if he would revoke the license, to give to the Government the clearest and most unequivocal notice of revocation. I do not regard the communication as a revocation, and my conclusion is, that so long as the invention was used by the Government, the user was an act done under the license.
The judgment of the court is that the petition be dismissed.
Weldon, J., sat in the case, but. was prevented by illness from taking part in the decision.
Scofield, J., was absent on the day when the judgment was announced, but took part in the decision.