**FILMTEC CORPORATION,**
Plaintiff–Appellee,

v.

**ALLIED–SIGNAL INC., and UOP Inc.,**
Defendants–Appellants.

No. 90–1228.

United States Court of Appeals,
Federal Circuit.

July 22, 1991.

Rehearing Denied Sept. 24, 1991.

Neal A. Waldrop, Neal A. Waldrop & Associates, P.C., Troy, Mich., argued, for plaintiff-appellee. With him on the brief were Douglas E. Whitney, Mary B. Graham and Matthew B. Lehr, Morris, Nichols, Arsht & Tunnell, Wilmington, Del. Also on the brief were Bernd W. Sandt and Philip D. Shepherd, The Dow Chemical Co., Midland, Mich., of counsel.

Eric C. Woglom, Fish & Neave, New York City, argued, for defendants-appellants. With him on the brief were Thomas J. Vetter, Roberta J. Morris and Marta E. Gross. Also on the brief was William J. Gilbreth, Fish & Neave, New York City.

Before PLAGER and LOURIE, Circuit Judges, and FRIEDMAN, Senior Circuit Judge.

PLAGER, Circuit Judge.

Allied–Signal Inc. and UOP Inc. (Allied), defendants-appellants, appeal from the preliminary injunction issued by the district court in *FilmTec Corp. v. Allied–Signal, Inc.*, C.A. No. 89–0919–GT(M) (S.D. Cal. Mar. 1, 1990). The trial court enjoined Allied from "making, using or selling, and actively inducing others to make use or sell TFCL membrane in the United States, and from otherwise infringing claim 7 of United States Patent No. 4,277,344 ['344]." The injunction issued following the findings and conclusions of the district court reported in *FilmTec Corp. v. Allied–Signal, Inc.*, C.A. No. 89–0919–GT(IEG) (S.D.Cal. Feb. 22, 1990) (*FilmTec*). Because of serious doubts on the record before us as to who has title to the invention and the ensuing patent, we vacate the grant of the injunction and remand for further proceedings.

## I. BACKGROUND

The application which ultimately issued as the '344 patent was filed by John E. Cadotte on February 22, 1979. The patent claims a reverse osmosis membrane and a method for using the membrane to reduce

the concentration of solute molecules and ions in solution.[1] Cadotte assigned his rights in the application and any subsequently issuing patent to plaintiff-appellee FilmTec Corp. (FilmTec). This assignment was duly recorded in the United States Patent and Trademark Office. Defendant-appellant Allied manufactured a reverse osmosis membrane and FilmTec sued Allied for infringing certain claims of the '344 patent.

John Cadotte was one of the four founders of FilmTec. Prior to founding FilmTec, Cadotte and the other founders were employed in various responsible positions at the North Star Division of Midwest Research Institute (MRI), a not-for-profit research organization. MRI was principally engaged in contract research, much of it for the United States (Government), and much of it involving work in the field of reverse osmosis membranes.

The evidence indicates that the work at MRI in which Cadotte and the other founders were engaged was being carried out under contract (the contract) to the Government "to provide research on In Situ–Formed Condensation Polymers for Reverse Osmosis Membranes." The contract provided that MRI

> agrees to grant and does hereby grant to the Government the full and entire domestic right, title and interest in [any invention, discovery, improvement or development (whether or not patentable) made in the course of or under this contract or any subcontract (of any tier) thereunder].

It appears that sometime between the time FilmTec came into being in 1977 (there is evidence that it was organized in the summer of 1977, and incorporated in September of that year) and the time Cadotte submitted his patent application in February of 1979, he made the invention that led to the '344 patent. As we will explain, just when in that period the invention was made is critical.

Cadotte left MRI in January of 1978. Cadotte testified that he conceived his invention the month *after* he left MRI. Allied disputes this, and alleges that Cadotte conceived his invention and formed the reverse osmosis membrane of the '344 patent earlier—in July of 1977 or at least by November of 1977 when he allegedly produced an improved membrane. Allied bases this on certain entries in the notebooks which Cadotte kept during this period. The trial judge found that "Cadotte's 1977 North Star notebook entries establish that he did [while still at MRI] combine the two chemicals which are claimed in the '344 patent." *FilmTec* at 3.

However, because of its view of the issues, the trial court concluded it did not need to decide whether that combination resulted in the claimed invention. This was because in granting the preliminary injunction, the trial court concluded that as a matter of law even if the invention was made while Cadotte was employed at MRI, under the contract the Government could have no more than equitable title to the patent, which title cannot be raised as a defense by Allied. The district court stated

> that the [G]overnment's rights in an invention discovered by an employee while under contract are equitable, and are not available as a defense by the alleged infringer against the legal titleholder.

Cited for this proposition was *Sigma Eng'g Serv., Inc. v. Halm Instrument Co., Inc.,* 33 F.R.D. 129, 138 USPQ 297 (E.D.N.Y. 1963). *FilmTec* at 3.

On the remaining issues raised, the trial judge ruled that: 1) Allied did not present clear and convincing evidence of Cadotte's intent to deceive the patent examiner; 2) Allied did not present clear and convincing evidence that the invention would have been obvious; 3) the Allied membrane is a literal infringement of claims 6 and 7 of the '344 patent; and 4) the issues of irreparable harm, balance of hardships, and public interest all weigh in favor of FilmTec.

---

1. Commercially, such a membrane may be useful in desalinizing seawater and purifying other salt-containing solutions.

## II. ISSUES ON APPEAL

On appeal from the grant of the preliminary injunction, Allied argues that the trial court committed reversible error on each of five substantive issues. In Allied's view, the contract vested legal title to the invention in the Government and, therefore, FilmTec lacks standing to bring suit; Cadotte misled the patent examiner as to the Government's possible rights in the invention and the '344 patent is unenforceable; the '344 patent is invalid because the invention claimed would have been obvious; when the claims are properly read, the Allied membrane does not infringe the '344 patent; and finally, the district court misapplied the test for issuance of a preliminary injunction.

It is well settled in this court that a party seeking a preliminary injunction

> must establish a right thereto in light of four factors: 1) a reasonable likelihood of success on the merits; 2) irreparable harm; 3) the balance of hardships tipping in favor of the requesting party; and 4) that the issuance of an injunction is in the public interest.

*Chrysler Motors Corp. v. Auto Body Panels of Ohio, Inc.*, 908 F.2d 951, 952, 15 USPQ2d 1469, 1470 (Fed.Cir.1990). The district court must balance each of these factors against the others and against the magnitude of the relief requested to determine whether a preliminary injunction should be granted or denied. *Id* at 953, 15 USPQ2d at 1471. We review the decision of the district court to determine "if there was an abuse of discretion, an error of law, or a serious misjudgment of the evidence." *Id.*

## III. DISCUSSION

### A.

We address first the question of title to the '344 patent. Because of its central importance to the resolution of this case, we requested and received supplemental briefing from the parties with regard to this issue. It is important to keep in mind that the issue before us is not who should ultimately be held to have title to the patent, but whether, in view of the state of the title, it can be said that FilmTec has a reasonable likelihood of success on the merits of that issue, sufficient to warrant the grant of the preliminary injunction.

Allied alleges that the evidence establishes that the contract between MRI and the Government grants to the Government "all discoveries and inventions made within the scope of their [i.e., MRI's employees] employment," and that the invention claimed in the '344 patent was made by Cadotte while employed by MRI. From this Allied reasons that rights in the invention must be with the Government and therefore Cadotte had no rights to assign to FilmTec. If FilmTec lacks title to the patent, FilmTec has no standing to bring an infringement action under the '344 patent. FilmTec counters by arguing that the trial court was correct in concluding that the most the Government would have acquired was an equitable title to the '344 patent, which title would have been made void under 35 U.S.C. § 261 (1988)[2] by the subsequent assignment to FilmTec from Cadotte.

The parties agree that Cadotte was employed by MRI and that the contract between MRI and the Government contains a grant of rights to inventions made pursuant to the contract. However, the record does not reflect whether the employment agreement between Cadotte and MRI either granted or required Cadotte to grant to MRI the rights to inventions made by Cadotte. Allied argues that Cadotte's inventions were assigned nevertheless to MRI. Allied points to the provision in the contract between MRI and the Government in which MRI warrants that it will obligate inventors to assign their rights to MRI.

While this is not conclusive evidence of a grant of or a requirement to grant rights by Cadotte, it raises a serious question about the nature of the title, if any, in

---

2. An assignment, grant or conveyance shall be void as against any subsequent purchaser or mortgagee for a valuable consideration, without notice, unless it is recorded in the Patent and Trademark Office within three months from its date or prior to the date of such subsequent purchase or mortgage.
35 U.S.C. § 261 (1988).

FilmTec. FilmTec apparently did not address this issue at the trial, and there is no indication in the opinion of the district court that this gap in the chain of ownership rights was considered by the court.

## B.

■ Since property rights in an invention itself could not, under any conventional meaning of the term, be considered real property,[3] they are by definition personal property.[4] While early cases have pointed to the myriad ways in which patent rights—that is, property in patents—are closer in analogy to real than to personal property,[5] the statutes establish as a matter of law that patents today have the attributes of personal property.[6] And 35 U.S.C. § 261 makes clear that an application for patent as well as the patent itself may be assigned.[7] Further, it is settled law that between the time of an invention and the issuance of a patent, rights in an invention may be assigned and legal title to the ensuing patent will pass to the assignee upon grant of the patent. *Gayler v. Wilder*, 51 U.S. (10 How.) 477, 493, 13 L.Ed. 504 (1850); *see* 4 A. Deller, *Walker on Patents* § 334 (1965).

■ If an assignment of rights in an invention is made prior to the existence of the invention, this may be viewed as an assignment of an expectant interest.[8] An assignment of an expectant interest can be a valid assignment. *Mitchell v. Winslow*, 17 F.Cas. 527, 531–32 (C.C.D.Me.1843) (nonexisting [personal] property may be the subject of valid assignment); *see generally Contract Rights as Commercial Security: Present and Future Intangibles*, 67 Yale L.J. 847, 854 n. 27 (1958). In such a situation, the assignee holds at most an equitable title. *Mitchell v. Winslow*, 17 F.Cas. at 532.

■ Once the invention is made and an application for patent is filed, however, legal title to the rights accruing thereunder would be in the assignee (subject to the rights of a subsequent purchaser under § 261), and the assignor-inventor would have nothing remaining to assign. In this case, if Cadotte granted MRI rights in inventions made during his employ, and if the subject matter of the '344 patent was invented by Cadotte during his employ with MRI, then Cadotte had nothing to give to FilmTec and his purported assignment to FilmTec is a nullity. Thus, FilmTec would lack both title to the '344 patent and standing to bring the present action. *See* 28 U.S.C. § 1498 (1988).

The question of FilmTec's right to maintain the action against Allied should not be confused with the question of whether Allied could defend by arguing that title to the patent was in a third party—the Government—and therefore Allied has a good defense against any infringement suit. The plea in *jus tertii* (title in a third

---

**3.** Real property: Land, and generally whatever is erected or growing upon or affixed to land. Black's Law Dictionary 1218 (6th ed.1990).

**4.** Personal property: In broad and general sense, everything that is the subject of ownership, not coming under denomination of real estate. *Id.* at 1217.

**5.** Intellectual property is
the most intangible· form of property, it still, in many characteristics, is closer in analogy to real than to personal estate. Unlike personal property, it cannot be lost or found; it is not liable to casualty or destruction; it cannot pass by manual delivery. Like real property, it may be disposed of, territorially, by metes or bounds; it has its system of conveyancing by deed and registration; estates may be created in it, such as for years and in remainder; and the statutory action for infringement bears a much closer relation to an action of trespass than to an action in trover and replevin. It has, too, what the law of real property has, a system of user by license.
*A.S. Solomons v. United States*, 21 Ct.Cl. 479, 483 (1886), *aff'd*, 137 U.S. 342, 11 S.Ct. 88, 34 L.Ed. 667 (1890).

**6.** "Subject to the provisions of this title, patents shall have the attributes of personal property." 35 U.S.C. § 261.

**7.** "Applications for patent, patents, or any interest therein, shall be assignable in law by an instrument in writing." 35 U.S.C. § 261.

**8.** Property of this type is variously termed an expectant interest, "future goods" as in the English Sale of Goods Act, or after-acquired property. *See* Williston, *Transfers of After–Acquired Personal Property*, 19 Harv.L.Rev. 557 (1906).

person) as it was known at common law was held in some early cases to be a good defense to a possessory action, although more recent cases reject the defense and allow recovery on a prior possession.[9] But the issue here is not whether title lies in the Government or some other third party; it is rather whether FilmTec has made a sufficient showing to establish reasonable likelihood of success on the merits, which includes a showing that title to the patent and the rights thereunder are in FilmTec.

As noted, the district court was of the view that if the Government was the assignee from Cadotte through MRI, the Government would have acquired at most an equitable title, and that legal title would remain in Cadotte. (The legal title would then have passed to FilmTec by virtue of the later assignment, pursuant to § 261 of the statutes.) The district court's support for this proposition was the decision in the District Court for the Eastern District of New York in 1963, in the case of *Sigma Eng'g v. Halm Instrument*, 33 F.R.D. 129, 138 USPQ 297.

But *Sigma*, even if it were binding precedent on this court, does not stretch so far. The issue in *Sigma* was whether the plaintiff, assignee of the patent rights of the inventors, was the real party in interest such as to be able to maintain the instant action for patent infringement. *See* Fed.R. Civ.P. 12(b)(7). Defendant claimed that the inventors' employer had title to the invention by virtue of the employment contract which obligated the inventors to transfer all patent rights to inventions made while in its employ. As the court expressly noted, no such transfers were made, however, and the court considered any possible interest held by the employer in the invention to be in the nature of an equitable claim. Whatever it was, it was not sufficient to make the employer an indispensable party to the suit under the Rule, and defendant's motion to dismiss was denied.

■ In our case, the contract between MRI and the Government did not merely obligate MRI to grant future rights, but expressly granted to the Government MRI's rights in any future invention. Ordinarily, no further act would be required once an invention came into being; the transfer of title would occur by operation of law. If a similar contract provision existed between Cadotte and MRI, as MRI's contract with the Government required, and if the invention was made before Cadotte left MRI's employ, as the trial judge seems to suggest, Cadotte would have no rights in the invention or any ensuing patent to assign to FilmTec.[10]

Because of the district court's view of the title issue, no specific findings were made on either of these questions. As a result, we do not know who held legal title to the invention and to the patent application and therefore we do not know if FilmTec could make a sufficient legal showing to establish the likelihood of success necessary to support a preliminary injunction.

### C.

■ It is well established that when a legal title holder of a patent transfers his or her title to a third party purchaser for value without notice of an outstanding equitable claim or title, the purchaser takes the entire ownership of the patent, free of any prior equitable encumbrance. *Hendrie v. Sayles*, 98 U.S. 546, 549, 25 L.Ed. 176 (1879). This is an application of the common law bona fide purchaser for value rule.

Section 261 of Title 35 goes a step further. It adopts the principle of the real property recording acts, and provides that the bona fide purchaser for value cuts off the rights of a prior assignee who has failed to record the prior assignment in the Patent and Trademark Office by the dates specified in the statute. Although the statute does not expressly so say, it is clear

9. *See* J. Cribbet & C. Johnson *Principles of the Law of Property* 13 (3d ed.1989).

10. We note in passing that, in the employment context, a specific contractual provision may not be the only basis for a duty to assign rights in inventions. *See* 5 E. Lipscomb, *Walker on Patents* § 19:13 (3d ed.1986).

that the statute is intended to cut off prior *legal* interests, which the common law rule did not.

Both the common law rule and the statute contemplate that the subsequent purchaser be exactly that—a transferee who pays valuable consideration, and is without notice of the prior transfer. The trial judge, with reference to FilmTec's rights as a subsequent purchaser, stated simply that "FilmTec is a subsequent purchaser from Cadotte for independent consideration. There is no evidence presented to imply that FilmTec was on notice of any previous assignment." *FilmTec* at 4. The court concluded that, even if § 35(b)(2) of the MRI contract automatically transferred title to the government, such assignment is not enforceable at law as it was never recorded.

■ Since this matter will be before the trial court on remand, it may be useful for us to clarify what is required before FilmTec can properly be considered a subsequent purchaser entitled to the protections of § 261. In the first place, FilmTec must be in fact a purchaser for a valuable consideration. This requirement is different from the classic notion of a purchaser under a deed of grant, where the requirement of consideration was a formality, and the proverbial peppercorn would suffice to have the deed operate under the statute of uses. Here the requirement is that the subsequent purchaser, in order to cut off the rights of the prior purchaser, must be more than a donee or other gratuitous transferee. There must be in fact valuable consideration paid so that the subsequent purchaser can, as a matter of law, claim record reliance as a premise upon which the purchase was made.[11] That, of course, is a matter of proof.

In addition, the subsequent transferee/assignee—FilmTec in our case—must be without notice of any such prior assignment. If Cadotte's contract with MRI contained a provision assigning any inventions made during the course of employment either to MRI or directly to the Government, Cadotte would clearly be on notice of the provisions of his own contract. Since Ca-

dotte was one of the four founders of Film-Tec, and the other founders and officers were also involved at MRI, FilmTec may well be deemed to have had actual notice of an assignment. Given the key roles that Cadotte and the others played both at MRI and later at FilmTec, at a minimum Film-Tec might be said to be on inquiry notice of any possible rights in MRI or the Government as a result of Cadotte's work at MRI. Thus once again, the key to FilmTec's ability to show a likelihood of success on the merits lies in the relationship between Cadotte and MRI.

### Conclusion

■ In our view of the title issue, it cannot be said on this record that FilmTec has established a reasonable likelihood of success on the merits. It is thus unnecessary for us to consider the other issues raised on appeal concerning the propriety of the injunction. The grant of the preliminary injunction is vacated and the case remanded to the district court to reconsider the propriety of the preliminary injunction in light of the four *Chrysler* factors and for further proceedings consistent with this opinion.

### COSTS

Each party shall bear its own costs.

VACATED AND REMANDED.

---

11. See Cribbet, *supra,* at 314–15, for a discus-      sion of the reliance concept in recording acts.