Heidelberg Harris v. Michael Loebach   CV-92-607-B    03/04/97

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE


**Heidelberg Harris, Inc.**

  **v.**                                               Civil No. 92-607-B

**Michael H. Loebach**


### O R D E R

Heidelberg Harris, Inc. ("Harris") brought an action against
Michael Loebach seeking an injunction, a declaratory judgment and
money damages arising out of a patent dispute.  Loebach responded
with counterclaims for patent infringement, conversion and
violation of the Lanham Act.  I previously determined that
Loebach could not recover on any infringement or conversion
claims that allegedly occurred prior to July 31, 1991, the date
that he acquired legal title to the patent on which his claims
are based.  See Order dated March 26, 1996.  Harris now argues
that it is entitled to summary judgment with respect to the
remaining infringement and conversion claims because it qualifies
as a bona fide purchaser for value.  Harris also argues that
Loebach lacks standing to bring a Lanham Act counterclaim.  For

the reasons that follow, I grant Harris's motion for summary judgment.

## I.  FACTS

### A.  Background[1]

Michael Loebach was employed as an engineer for Motter Printing Press Company[2] in York, Pennsylvania, from 1974 until 1982.  At that time, Motter was the largest producer in the United States of the highest print-quality presses, gravure presses.  Harris, operating in Dover, New Hampshire, was known as a high volume producer of offset printing equipment, a lower quality system, and was the largest producer in the United States of web offset presses.  Each type of press uses a piece of equipment called a "folder" to cut and fold printed sheets into the final product.  One type of folder used small pins to move paper through the equipment that left small holes which required trimming.

---

[1]  The facts in this section are drawn from my March 26, 1996 order partially granting Harris's earlier motion for summary judgment.

[2]  The original Motter company was later taken over and became KBA-Motter Corporation.  Because the change is not material to the issues or decision in this case, I refer to the company and its successor as "Motter."

In 1980, Loebach developed a new pinless folder for offset presses called a "diverter." Loebach subsequently assigned the rights to his diverter invention, as described in a pending patent application, to Motter. The patent, United States Patent Number 4,373,713 ("the '713 patent"), was issued to Motter in 1983.

B. **The 1983 and 1985 Agreements**

Harris contracted with Motter on October 3, 1983 to design and build pinless folders using Loebach's technology. Harris agreed to pay Motter $750,000 to design and build a prototype and to furnish certain licenses. The agreement also obligated the parties to enter into a Manufacturing and Purchase Agreement which would require Harris to purchase its pinless folder requirements from Motter for the seven year term of the agreement at a "reasonable purchase price." To the extent that Motter was unable to supply Harris's requirements, the agreement specified that "Motter hereby grants to Harris an irrevocable, royalty-free, exclusive license to: . . . use the patents to manufacture, use, and sell the products in the Field of Use."[3]

_____

[3] Field of Use is defined in the agreement as "the web heatset offset market of the Graphics Arts Printing Industry."

The agreement further specified that "[a]fter seven (7) years, Motter hereby grants Harris an unrestricted, exclusive license to the Technical Information and Patents to manufacture, use, and sell the Product in the Field of Use. Provided that after the initial seven years, subject to Harris' business conditions, Harris will continue to solicit competitive bids from Motter for the manufacture of the Product."

Harris purchased seven folders from Motter pursuant to the 1983 Agreement. In 1985, however, Harris began to exert pressure on Motter to lower its prices because Harris believed that it could save money by manufacturing the folders overseas. Fearing that Harris might acquire an immediate royalty-free right to manufacture the folders itself under the 1983 agreement if Motter could not sell folders at what Harris deemed a "reasonable price," Motter entered into negotiations with Harris to modify the 1983 agreement.

The parties' negotiations culminated in a modification that became effective on February 15, 1985. Pursuant to the 1985 Agreement, Harris agreed to pay Motter royalties for the exclusive right to manufacture the pinless folders and its component parts for a minimum royalty payment of $65,000 per folder during the balance of the 1983 Agreement's seven year

4

term.  The 1985 Agreement left undisturbed Harris's right under the 1983 Agreement to an exclusive royalty-free license to exploit the technology in the Field of Use after October 3, 1990.

Loebach first learned of his potential claim to the '713 patent in August 1989 when he discovered that Harris was paying Motter royalties.  Loebach claims that he contacted Richard McKrell, vice president of research and development at Harris, by letter and telephone in November 1989, and informed him of his claim to the '713 patent.

## C.  **THE MOTTER LITIGATION**

Michael Loebach filed suit against Motter in April 1990 in the Middle District of Pennsylvania, where the case was assigned to Judge Sylvia Rambo.  His suit alleged that Motter gained the assignment of his patent for the diverter mechanism by misrepresentation and that the assignment failed for lack of consideration.  He asked that a constructive trust be imposed on all of Motter's royalties and profits earned from the licensing agreement with Harris.  Following a trial on liability in July 1991, the jury returned a verdict in favor of Loebach.  On July 31, 1991, the court ordered rescission of the patent assignment, and initially awarded Loebach the entire amount, $4,303,216.00, that Harris paid Motter for the right to manufacture sixty-one

folders.  Upon a motion for reconsideration from Motter, however, the court reviewed its damage calculation and, borrowing damage theories from patent infringement cases, held that the proper measure of Loebach's damages was either his lost profits or, as a minimum, a reasonable royalty.  To determine an appropriate damage award, the court conducted a bench trial in April 1992 to allow the parties to present new evidence and argument on the damage issues.

Several months later, the court issued an opinion in which it determined that Loebach was entitled to a "reasonable royalty" of twenty-five percent of the foreseeable net profit to Motter on each folder sold in 1985.  Using this formula, the court determined that the royalty payment should be $13,625.00 per folder, for a total of $831,125.00 for all sixty-one folders eventually produced under the Harris-Motter agreement.  Loebach appealed, and the district court's decision was affirmed by the Third Circuit in July 1993 without a reported opinion.  See Loebach v. Motter Printing Press Co., 5 F.3d 1489 (3d Cir. 1993) (table).

## II. THE SUMMARY JUDGMENT STANDARD

The familiar summary judgment standard applies in cases involving patent disputes. Summary judgment is appropriate if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Nike Inc. v. Wolverine World Wide, Inc., 43 F.3d 644, 646 (Fed. Cir. 1994). A "material fact" is one "that might affect the outcome of the suit under the governing law," and a genuine factual issue exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). I examine Harris's motion in light of the summary judgment standard.

## III. ANALYSIS

### A. Conversion and Patent Infringement Claims

The common law bona fide purchaser for value rule provides an affirmative defense to patent infringement and conversion claims. Filmtec Corp. v. Allied Signal, Inc., 939 F.2d 1568, 1573 (Fed. Cir. 1991); Restatement (Second) of Torts § 229 cmt. d (1965); W. Page Keaton, et al., Prosser and Keaton on the Law of Torts, § 15, at 94 (5th ed. 1985); Powell v. Cavanaugh, 69 N.H.

364, 366 (1898). The doctrine has four requirements: (1) the transferor (in this case Motter) must have legal title to the patent when the transfer occurs (a fact which Loebach does not dispute); (2) the transfer must be to a third party (in this case Harris); (3) the transfer must be "for value" (in this case the consideration Harris agreed to pay under the 1983 agreement); and (4) the transferee must take title without notice of any competing equitable claims. Filmtec, 939 F.2d at 1573. If all four requirements are satisfied, a third party purchaser takes title to a patent free and clear of any prior equitable encumbrance. Id. Only the final requirement is in issue here.

Loebach argues that the bona fide purchaser doctrine does not apply here because Harris learned of Loebach's claim to the '713 patent in November 1989, well before October 3, 1990, when it acquired an exclusive license pursuant to the 1983 Agreement. The fatal flaw in this argument is that it is based on an untenable interpretation of the 1983 Agreement. Notwithstanding Loebach's contrary argument, Harris obtained a noncontingent, exclusive license to exploit the '713 patent in the Field of Use after October 3, 1990 as soon as it signed the 1983 Agreement. Since Harris had no knowledge of Loebach's equitable claim to the '713 patent when it signed the 1983

8

Agreement and since the other requirements of the bona fide purchaser for value doctrine are not in dispute, Harris is entitled to summary judgment on Loebach's infringement and conversion counterclaims.

Loebach next argues that Judge Rambo's July 1991 ruling collaterally estops Harris from claiming that it is a bona fide purchaser for value. This argument is frivolous. Collateral estoppel bars relitigation of an issue only if: (1) both "proceedings involved the same issue of law or fact"; (2) "the parties actually litigated the issue in the [previous] proceeding"; (3) the court in the prior litigation "actually resolved the issue in a final and binding judgment"; and (4) "its resolution of that issue of law or fact was essential to its judgment (i.e., necessary to its holding)." Monarch Life Ins. Co. v. Ropes & Gray, 65 F.3d 973, 978 (1st Cir. 1995) (emphasis omitted). Judge Rambo's ruling focused exclusively on Loebach's rights vis-à-vis Motter; she did not determine what rights, if any, that Harris acquired under the 1983 Agreement. Therefore, the collateral estoppel doctrine is inapplicable even if the other requirements of the doctrine could be satisfied.

**B. Lanham Act Claim**

Loebach also brings a counterclaim against Harris alleging that Harris has violated the Lanham Act by advertising to the web offset printing industry that Harris's folders use the "patented diverter" when Harris now claims that it has not used Loebach's invention since 1990.  Section 1125(a) prohibits false designations of origin or false or misleading descriptions of products which are likely to cause confusion and provides a cause of action to "any person who believes that he or she is or is likely to be damaged by such act."  15 U.S.C.A. § 1125(a) (West Supp. 1996); see Kasco Corp. v. General Services, Inc., 905 F. Supp. 29, 32-34 (D. Mass. 1995) (reviewing effect of 1988 amendments on First Circuit's limited interpretation of Lanham Act).  Harris contests Loebach's standing to bring a Lanham Act claim since Loebach does not have a right to exploit the '713 patent in the Field of Use and is not a competitor in the web offset press industry.

Loebach's counterclaim alleges false representation in advertising under section 1125(a).  See Stanfield v. Osborne Industries, Inc., 52 F.3d 867, 873 (10th Cir.) (citing Waits v. Frito-Lay, Inc., 978 F.2d 1093, 1108 (9th Cir. 1992), cert. denied, 506 U.S. 1080 (1993)), cert. denied, 116 S. Ct. 314

(1995).  The First Circuit has not addressed the question of standing for a false advertising claim under the Lanham Act. Other jurisdictions have held that false advertising claims are cognizable only when brought by a competitor of the advertiser who can show injury from the false advertisement, Stanfield, 52 F.3d at 873, and Waits, 978 F.2d at 1109, or by a party whose reasonable commercial interests were injured, Serbin v. Ziebart Intern. Corp., Inc., 11 F.3d 1163, 1177-78 (3d Cir. 1993). Loebach has not shown that he is a competitor of Harris in the web offset printing press industry or that his commercial interests were harmed by Harris's advertising.  Accordingly, Loebach lacks standing to maintain his Lanham Act claim.

## IV.  CONCLUSION

For the foregoing reasons, Harris's motion for summary judgment (document no. 64) is granted.

SO ORDERED.

_____
Paul Barbadoro
United States District Judge

March 4, 1997

cc:  Thomas Donovan, Esq.
     Richard Mayer, Esq.
     Leslie Stacey, Esq.

11

Karen Walker, Esq.
Kerry Barnsley, Esq.
Philip Mann, Esq.