**FREEDOM WIRELESS, INC., Plaintiff**

v.

**BOSTON COMMUNICATIONS GROUP, INC., et al., Defendants.**

**No. CIV.A. 00–12234–EFH.**

United States District Court, D. Massachusetts.

April 16, 2002.

F. Dennis Saylor, IV, Douglas C. Doskocil, Cheryl L. Rainville, Goodwin Procter LLP, Boston, MA, Michael T. Zeller, Steven D. Anderson, A. William Urquhart, John J. Quinn, Diane C. Hutnyan, Quinn Emanuel Urquhart Oliver & Hedges, LLP, Los Angeles, CA, Robert A. Pressman, Bramson & Pressman, Conshohocken, PA, for Plaintiff.

Stephen B. Deutsch, Foley, Hoag & Elliot, Susan E. Stenger, Perkins, Smith & Cohen, Vickie L. Henry, John E. Nilsson, Foley, Hoag & Elliot, LLP, Kirk A. Dammam, Lewis, Rice & Fingersh, LC, St. Louis, MO, Rebecca Hooley, McCutchen, Doyle, Brown & Enersen, San Francisco, CA, Lawrence G. Green, Perkins, Smith & Cohen, Boston, MA, J. David Hadden, James G. Snell, Eric F. Pierson, Patrick T. Weston, Michael E. Woods, Christopher B. Hockett, Mary T. Huser, Adrienne L. Taclas, S. Christian Platt, McCutchen, Doyle, Brown & Enersen, L.L.P., Palo Alto, CA, Laura Brutman, Darby & Darby, Frank Maldari, New York City, Joan M. Griffin, Douglas J. Kline, Jennifer L. Conrad, Testa, Hurwitz & Thibeault, Boston, MA, Peter D. Baird, Richard A. Halloran, Lewis & Roca, Phoenix, AZ, Norma G. Formanek, Nan E. Joesten, Farella Braun & Martel LLP, San Francisco, CA, Scott G. Lindvall, Pierre R. Yanney, James Hanft, Robert Laurenzi, Darby & Darby, New York City, Mark P. Spzak, Luke T. Cadigan, Ropes & Gray, Boston, MA, Martin F. Cunniff, Edward Ham, Howrey & Simon, Washington, DC, Mark D. Wegener, Howrey & Simon, Washington, DC, Christopher R. Dillion, Ropes & Gray, Boston, MA, Monique M. Drake, Gibson, Dunn & Crutcher LLP, Denver, CO, Charles K. Verhoeven, Quinn Emanuel Urquhart Oliver & Hedges LLP, San Francisco, CA, George C. Rockas, Wilson, Elser, Moskowitz, Edelman & Dicker, Boston, MA, for Defendants.

## *MEMORANDUM AND ORDER*

HARRINGTON, Senior District Judge.

This Order is in response to Defendant Rogers Wireless' *Motion for Summary Judgment for Lack of Personal Jurisdiction and for Non–Infringement,* which was filed on November 29, 2001. Following a hearing on February 25, 2002, this Court grants the defendant's motion for summary judgment for non-infringement. This Memorandum and Order sets forth the facts and grounds for the Court's decision.

### I. *Background*[1]

Prepaid wireless is a form of wireless telephone communications that allows users to pay in advance for cellular telephone service.[2] Traditional wireless ser-

---

1. The facts set forth in the *Background* section of this Memorandum and Order have been taken from the relevant "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits." Fed.R.Civ.P. 56(c). Any conflict over facts material to this motion has been resolved "in the light most favorable to the nonmovant." *Conward v. Cambridge Sch. Comm.*, 171 F.3d 12, 18 (1st Cir.1999) (citing *Medina–Munoz v. R.J. Reynolds Tobacco Co.*, 896 F.2d 5, 8 (1st Cir.1990)).

2. The terms "wireless" and "cellular" appear to be synonymous with one another in the context of this technology. For purposes of clarity, this opinion uses only the term "wireless."

vice is provided on credit, and the provider bills the user for the service at the end of each month. Prepaid wireless service, on the other hand, works something like a deposit system, with the subscriber paying a certain sum of money into an account and drawing upon that account each time the service is used. By allowing customers to pay for wireless telephone subscriptions in advance, prepaid wireless is an effective means of supplying wireless service to those customers whose poor credit histories would otherwise make this impossible.

Defendant Rogers Wireless, Inc., ("Rogers") is a Canadian wireless telephone service provider—sometimes called a carrier—that sells wireless telephone equipment and services exclusively to Canadian residents. Rogers is not licensed to conduct business in the United States. It does not own any assets or property in the United States and does not maintain an office here. Rogers does not direct any advertising or marketing toward the United States, and its services and equipment are not available for purchase by United States residents.

In addition to providing basic wireless telephone service, Rogers also offers prepaid wireless service to its customers. During the relevant time period, however, Rogers lacked either the technology or the desire to create and manage its own prepaid wireless billing system.[3] Therefore, to provide its customers with the option of prepaid wireless service, Rogers contracted with co-defendant Boston Communications Group, Inc., ("BCGI") to provide the prepaid billing services that were neces-

sary for Rogers to supply prepaid wireless service to its customers.

BCGI is a Massachusetts based company that provides prepaid wireless billing services to wireless carriers, such as Rogers, through the use of its C2C platform.[4] The C2C platform is BCGI's proprietary name for a system where wireless calls that have been designated as prepaid are rerouted from the outside carrier—in this case Rogers—to BCGI's C2C network. The C2C network, in turn, is BCGI's name for its prepaid billing processing system, which consists of multiple receiving stations, called nodes, linked to a central computer database that analyzes the calls to determine whether the caller has sufficient funds to complete the call and the maximum duration of the call.

The prepaid wireless service that Rogers provided to its customers through its use of BCGI's billing system operated in the following manner: A Rogers prepaid wireless customer would place a telephone call by dialing a destination phone number and pressing the send key on the telephone. That call, along with signaling information that included the caller's identifying phone number, would be received in Canada by one of Rogers' radio-towers and then transmitted to one of Rogers' mobile telephone switching offices, which were also located exclusively within Canada. The mobile telephone switching office would then identify the call as coming from a prepaid subscriber and would reroute the call to one of the BCGI nodes located in Canada.

Once the BCGI node, located in Canada, had received the call forwarded by Rogers,

---

**3.** As of March, 2001, Rogers owns and operates its own prepaid wireless billing system.

**4.** BCGI is also a party to this lawsuit, and there is considerable disagreement as to the precise method by which the C2C system op-

erates. However, because this is a motion for summary judgment, the Court—for purposes of this Memorandum and Order only—has adopted the plaintiff's description of BCGI's C2C system.

it would send the call, along with information relating to the caller's identity and location, to the BCGI central database located in Woburn, Massachusetts. The BCGI database, which had current information relating to the caller's prepaid account balance stored in its memory, would then check the caller's current prepaid account balance, determine the cost of the requested call, calculate the maximum duration for the call, and send this information back across the border to the BCGI node located in Canada. Finally, the BCGI node in Canada would forward the call, along with the information collected from the database in Massachusetts, back to Rogers' mobile telephone switching office so that the call could be connected.

■ This patent infringement suit began when an Arizona-based company called Freedom Wireless, Inc., ("Freedom Wireless") learned that BCGI's prepaid billing system—in conjunction with the prepaid wireless services provided by various wireless carriers, including Rogers— potentially infringed upon two patents that it held in the art of prepaid wireless technology.[5] In March of 2000, Freedom Wireless sued BCGI, Rogers, and twelve other wireless carriers for patent infringement in the United States District Court

for the Northern District of California. Venue was subsequently transferred to the District of Massachusetts. On November 29, 2001, Rogers brought this motion for summary judgment arguing that, even if its prepaid wireless system infringed upon the Freedom Wireless patents, this Court must nevertheless dismiss the case against Rogers for lack of personal jurisdiction. In the alternative, Rogers argues that it is entitled to summary judgment because it did not use the patented invention "within the United States," as is required under Title 35, Section 271(a) of the United States Code.[6] This Court grants Rogers' motion for summary judgment for non-infringement on the ground that Rogers did not use the patented invention within the United States. Because summary judgment is granted on this issue, the Court does not need to consider the issue of personal jurisdiction.[7]

## II. *Summary Judgment Standard*

Summary Judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

5. Specifically, U.S. Patent No. 5,722,067 (issued Feb. 24, 1998) and U.S. Patent No. 6,157,823 (issued Dec. 5, 2000).

6. In response to Rogers' motion for summary judgment, Freedom Wireless has argued that Rogers may also be held liable for infringement under 35 U.S.C. § 271(f)(2), which prohibits the exportation of any component of an invention with the knowledge that it will be combined in a way that would have infringed upon a patent if such combination had occurred in the United States. However, Freedom Wireless did not plead Section 271(f)(2) as a basis for patent infringement in either its initial complaint or its first amended complaint. Therefore, because the issue is not properly before the Court, the Court has dis-

regarded the issue of liability under Section 271(f)(2). *E.g., Fisher v. Metro. Life Ins. Co.,* 895 F.2d 1073, 1078 (5th Cir.1990).

7. Personal jurisdiction sounds in the Due Process Clause of the United States Constitution. *See Burger King v. Rudzewicz,* 471 U.S. 462, 474–75, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985); *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945). Thus, by deciding this case under 35 U.S.C. § 271(a), this Court is keeping with the long-standing practice of avoiding a constitutional issue where there is an alternate basis for determination. *New England Legal Found. v. Mass. Port Auth.,* 883 F.2d 157, 176 (1st Cir. 1989).

Fed.R.Civ.P. 56(c). In determining whether there is a genuine issue of material fact, the court "must construe the record and all reasonable inferences from it in favor of the nonmovant." *Perez v. Volvo Car Corp.*, 247 F.3d 303, 310 (1st Cir.2001). Once it has been determined that there is no genuine dispute of material fact, then the court may make a judgment as a matter of law. *Suarez v. Pueblo Int'l, Inc.*, 229 F.3d 49, 53 (1st Cir.2000).

### III. *Analysis*

■ To be held liable for patent infringement, Rogers must have made, used, offered to sell, or sold a patented invention within the United States. 35 U.S.C § 271(a). Patent infringement cannot be predicated on acts that took place wholly in a foreign country. *Rotec Indus., Inc. v. Mitsubishi Corp.*, 215 F.3d 1246, 1251 (Fed.Cir.2000); *Ortho Pharm. Corp. v. Genetics Inst., Inc.*, 52 F.3d 1026, 1033 (Fed. Cir.1995). This is because the rights conferred to a patent holder by the laws of this country are confined to the United States and its territories. *Deepsouth Packing Co. v. Laitram Corp.*, 406 U.S. 518, 531, 92 S.Ct. 1700, 32 L.Ed.2d 273 (1972); *accord Rotec*, 215 F.3d at 1251. If the holder of a United States patent desires to extend his monopolistic protection into another country, then the appropriate course of action is to secure a patent in that nation and to seek protection in its courts. *Deepsouth*, 406 U.S. at 531, 92 S.Ct. 1700. Thus, Section 271(a) defines infringement as the unauthorized use of a patented invention "within the United States."[8]

■ For purposes of this summary judgment motion, Rogers does not deny that it engaged in an unauthorized use of Freedom Wireless' patented invention. Instead, Rogers argues that it did not make, use, offer to sell, or sell the patented invention within the United States. Specifically, it argues that any conduct that would have amounted to infringement in this case occurred in Canada. The telephone calls were received by a wireless tower located outside of the United States, were transmitted to a mobile telephone switching· office located outside of the United States, were rerouted to a BCGI receiving node located outside of the United Sates, and, ultimately, were connected to the Canadian local carrier located outside of the United States. In brief, Rogers argues that this is a Canadian system operated by a Canadian corporation exclusively for Canadian residents and is therefore beyond the scope of the patent infringement statute.

Freedom Wireless, on the other hand, argues that Rogers did use its prepaid wireless system within the United States because Rogers' system relied on BCGI's C2C billing system, which required calls to be transmitted to and returned from the BCGI database located in Massachusetts. It further argues that because the signal processing performed by the BCGI database in Massachusetts was an essential component of Rogers' prepaid wireless service, Rogers used the patented invention within the United States. Thus, the critical issue in this motion for summary judgment is whether Rogers' reliance on the BCGI database in Massachusetts can constitute use within the United States so

---

**8.** Specifically, Section 271(a) provides that "whoever without authority makes, uses, offers to sell, or sells any patented invention, *within the United States* ... during the term of the patent therefor, infringes the patent." 35 U.S.C. § 271(a) (emphasis provided). The territoriality of the United States patent laws is also expressed in 35 U.S.C. § 154(a)(1), which grants "the right to exclude others from making, using, offering for sale, or selling the invention *throughout the United States*." (Emphasis provided).

as to satisfy the territoriality requirement of 35 U.S.C. § 271(a).

As a matter of precedent, a transnational system that extends beyond the United States border can satisfy the territoriality requirement where the system's control point is present within the United States. In *Decca Ltd. v. United States*, 210 Ct.Cl. 546, 544 F.2d 1070, 1074 (1976), the United States Court of Claims considered a transnational navigational system for ships and aircraft that required the simultaneous use of at least three radio broadcast stations, two of which were in the United States and one of which was in Norway. The court found that, although part of the navigational system was located outside of the United States, the master station that coordinated and monitored the system was located within the United States. *Id.* Thus, the court reasoned that because the system's control point was present within the United States, the whole system—for purposes of the patent law—was within the United States.

The court in *Decca* borrowed its analysis from a Patent Office Board of Interference decision called *Rosen v. NASA*, 152 U.S.P.Q. 757, 768 (BNA 1966). Although the issue in *Rosen* was reduction to practice[9] rather than extraterritorial infringement, the case was factually similar to *Decca* in that it involved a navigational devise for spacecraft that included multiple satellites in space monitored from a control point in the United States. *Id.* at 767–78. The Board stressed that the naviga-

tional device should be viewed as a single "integrated system" and the location of that system should be based on the location of the system's control point. *Id.* at 768. Thus, because the system's control point was in the United States, the Board ruled that the satellite system had been reduced to practice in the United States. *Id.*

Since *Decca*, only one other case has addressed the issue of whether a system that extends across the United States border can satisfy the territoriality requirement of 35 U.S.C. § 271(a). In *Hughes Aircraft Co. v. United States*, 29 Fed.Cl. 197, 242–43 (1993), the United States Court of Federal Claims considered the territoriality of a spacecraft called the Ariel 5. The Ariel 5, which was built in England and launched into space from Kenya by a team of Italian engineers, was designed to perform scientific experiments from space. *Id.* at 242. One of these experiments was sponsored by the United States and involved monitoring the sky for transient x-ray phenomena and then transmitting the data to a NASA station in the United States for analysis. *Id.* Despite the fact that the NASA station provided "tracking and data acquisition services" for the spacecraft, the court found that the Ariel 5 had not been used within the United States. *Id.*

In holding that the Ariel 5 spacecraft had not been used within the United States, the *Hughes* court distinguished *Decca* and *Rosen* on three grounds. First,

9. Reduction to practice is a means for determining priority of invention in a patent dispute. The United States Patent Law awards priority of invention to the first inventor, and invention is determined by conception and reduction to practice. *35 U.S.C. § 102(g)*. Prior to January 1, 1996, reduction to practice must have occurred within the United States to support a claim of priority. 35 U.S.C. § 104 (1994) ("an applicant for a pat-

ent, or patentee, may not establish a date of invention by reference to knowledge or use thereof, or any other activity with respect thereto, in a foreign country, except as provided in section 119 and 365 of this title"). Thus, the issue in *Rosen*, was whether the claimed invention had been reduced to practice within the United States. 152 U.S.P.Q. at 761, 767.

the extraterritorial spacecraft in *Hughes* had never entered the United States but merely transmitted data signals to NASA. *Hughes,* 29 Fed.Cl. at 242. Secondly, there was no direct control exercised over the spacecraft from within the United States. *Id.* Thirdly, and most importantly, the *Hughes* court distinguished the prior cases by stating that "unlike the facts in *Decca* and *Rosen,* the 'control point' ... for Ariel 5 was not located in the United States." *Id.* at 243. The court implicitly reasoned that "[a]lthough [NASA's] Goddard Space Center was the central communications link for tracking and data acquisitions services," it did not direct, control, or monitor the spacecraft. *Id.* Thus, because Ariel 5 did not have a domestic control point, it had not been used within the United States and could not form the basis for a finding of infringement. *Id.*

Here, the fact that the BCGI database in Massachusetts is an essential component of Rogers' prepaid wireless system is not sufficient to warrant a finding that Rogers used the system within the United States because the database was not the system's control point. Although the system required that calls be transferred from the BCGI nodes in Canada to the BCGI database in Massachusetts for billing services, the BCGI database was not the system's control point. Unlike the master station in *Decca* and the control point in *Rosen,* the BCGI database did not direct, control, or monitor Rogers' prepaid wireless system in any way. *Cf. Decca,* 544 F.2d at 1074; *Rosen,* 152 U.S.P.Q. at 768. Rather, the database received calls that were transmitted from Canada, analyzed the calls to determine if and for how long they could remain connected, and returned the calls, along with the acquired information, back to Canada.

Because the BCGI database did not direct, control, or monitor the rest of Rogers' prepaid system, the database more closely resembled the domestic "central communications link for tracking and data acquisition services" in *Hughes,* 29 Fed.Cl. at 242–43. The Court of Federal Claims in *Hughes* held that the domestic link was not the system's control point because its "role was limited to providing a data communications link," while "the United Kingdom assumed the responsibility for controlling the device." *Id.* at 242. Similarly, the role of the BCGI database was limited to analyzing the rerouted calls and transmitting billing information. Thus, because the database in Massachusetts did not direct, control, or monitor the rest of Rogers' prepaid system, it was not the system's control point.

Assuming that Rogers' prepaid wireless system had a control point, that point appears to have been Rogers' network of mobile telephone switching offices in Canada. The mobile telephone switching offices were responsible for identifying those calls that were designated as prepaid, directing the calls to the BCGI nodes for billing services, and then causing the calls to be connected through the Canadian local carrier. Unlike the BCGI database in Massachusetts, which merely analyzed the calls for billing information, Rogers' mobile telephone switching offices were actually responsible for processing the prepaid wireless telephone calls and making sure that the calls were completed. It was these mobile telephone switching offices located in Canada that directed, controlled, or monitored the Rogers' prepaid billing system.

Unlike *Decca* or *Rosen,* this is not a situation where the defendant is a United States resident [10] engaging in the "opera-

10. In *Decca, Rosen,* and *Hughes,* the defen-                    dant was not just a resident of the United

tion of an integrated instrumentality, a substantial portion of which is within the United States, and which is operated by and for the residents of the United States." *Rosen,* 152 U.S.P.Q. at 767 (quoting *Alford v. Loomis,* Patent Office Board of Patent Interferences decision No. 84, 143 (Nov. 30, 1955), *rev'd on other grounds,* 45 C.C.P.A. 807, 252 F.2d 571 (Cust. & Pat.App.1958)); *see also Decca,* 544 F.2d at 1074. Instead, this is a case where the defendant was a Canadian resident operating a system exclusively for the benefit of Canadian residents, the substantial portion of which was located within Canada. In other words, this was a Canadian system that happened to extend into the United States, not a domestic system that happened to extend into Canada. *Cf. Decca,* 544 F.2d at 1074; *Rosen,* 152 U.S.P.Q. at 768.

In summary, Rogers cannot be liable for infringement under 35 U.S.C. § 271(a) because it did not make, use, offer to sell, or sell its prepaid wireless system within the United States. Rogers is a Canadian business offering services exclusively to Canadian residents. The majority of Rogers' prepaid wireless system was located in Canada, including the radio-towers that received the calls, the mobile telephone switching offices that processed the calls, and the BCGI nodes that transmitted the calls to and from the BCGI billing database. Although Rogers relied on the BCGI database in the United States, this database was not the system's control point and could not establish territoriality for an otherwise extraterritorial system. Thus, Rogers did not use the allegedly infringing system within the United States

and cannot be held liable for patent infringement under Section 271(a). Defendant Rogers' motion for summary judgment is granted.

SO ORDERED.

---

States but actually *was* the United States. *See Hughes v. United States,* 29 Fed.Cl. 197 (1993) (alleging that United States had infringed upon the Williams patent); *Decca v. United States,* 210 Ct.Cl. 546, 544 F.2d 1070 (1976) (alleging that the United States had infringed

upon the O'Brien patent); *Rosen v. NASA,* 152 U.S.P.Q. 757 (Bd. Pat. Interferences 1966) (alleging an interference between a patent owned by the United States and a patent owned by the Hughes Aircraft Company).