**FREEDOM WIRELESS, INC., Plaintiff,**

v.

**BOSTON COMMUNICATIONS GROUP, INC., et al., Defendants.**

No. 00–CIV–1129.

United States District Court, D. Massachusetts.

Aug. 19, 2002.

F. Dennis Saylor, IV, Douglas C. Doskocil, Cheryl L. Brunetti, *Goodwin Procter LLP*, Boston, MA, Michael T. Zeller, Steven D. Anderson, A. William Urquhart, Johanna Y. Ong, Erica P. Taggart, John P. Quinn, Diane C. Hutnyan, *Quinn Emanuel Urquhart Oliver & Hedges, LLP*, Los Angeles, CA, Robert A. Pressman, Bramson

& Pressman, Conshohocken, PA, for Plaintiff.

Susan E. Stenger, Perkins, Smith & Cohen, Vickie L. Henry, Foley, Hoag & Eliot, LLP, John E. Nilsson, Foley, Hoag & Eliot LLP, Stephen B. Deutsch, Foley Hoag LLP, Lawrence G. Green, Perkins, Smith & Cohen, Boston, MA, Christopher B. Hockett, J. David Hadden, James G. Snell, Eric F. Pierson, Patrick T. Pierson, Patrick T. Weston, Michael E. Woods, Mary T. Huser, Adrienne L. Taclas, S. Christian Platt, Bingham McCutchen LLP, East Palo Alto, CA, Rebecca Hooley, Bingham McCutchen LLP, San Francisco, CA, Laura Brutman, Frank Maldari, Douglas J. Kline, Karenn L. Febeo, Rockville Centre, NY, Jennifer L. Conrad, Testa, Hurwitz & Thibeault, LLP, Boston, MA, Edward V. DiLello, Guy Yonay, Darby & Darby, New York City, Joan M. Griffin, Cooke, Clancy & Gruenthal, LLP, Boston, MA, Peter D. Baird, Richard A. Halloran, Lewis & Roca, Phoenix, AZ, Norma G. Formanek, Nan E. Joeston, Farella Braun & Martel LLP, San Francisco, CA, Scott G. Lindvall, Pierre R. Yanney, James Hanft, Robert Laurenzi, Darby & Darby, New York City, Mark P. Spzak, Luke T. Cadigan, Ropes & Gray, Boston, MA, Martin F. Cunniff, Edward Han, Mark D. Wegener, Howrey & Simon, Washington, DC, Christopher R. Dillon, Ropes & Gray, Boston, MA, Monique M. Drake, Gibson, Dunn & Crutcher LLP, Denver, CO, Charles K. Verhoeven, Quinn Emanuel Urquhart Oliver & Hedges LLP, San Francisco, George C. Rockas, Wilson, Elser, Moskowitz, Edelman & Dicker, Boston, MA, Philip C. Swain, Foley, Hoag & Eliot, Boston, MA, for Defendants

## MEMORANDUM

HARRINGTON, Senior District Judge.

This case involves a patent infringement suit by Freedom Wireless, Inc. ("Freedom Wireless"). The two patents that are alleged to have been infringed in this case are U.S.Patent No. 5,722,067 (issued Feb. 24, 1998) and U.S.Patent No. 6,157,823 (issued Dec. 5, 2000), both of which were issued in the names of co-inventors Daniel Harned and Douglas Fougnies and assigned to Freedom Wireless by way of its predecessor company, Cellular Express, Inc. On June 3, 2002, Defendant Boston Communications Group, Inc., ("BCGI") filed a motion for summary judgment alleging that Freedom Wireless is not the owner of the two patents at issue and, therefore, lacks standing to sue for infringement. The Court heard argument on this issue on July 23, 2002.

 It is a basic principle of patent law that a party who lacks legal ownership of a patent is without standing to sue for infringement of that patent. *Filmtec Corp. v. Allied–Signal Inc.,* 939 F.2d 1568, 1572 (Fed.Cir.1991) (stating that a party who lacked patent title would be without "standing to bring the present action"); *Vaupel Textilmaschinen v. Meccanica Euro Italia,* 944 F.2d 870, 875 (Fed.Cir. 1991) (stating that a party who assigned all of its ownership in a patent has no "right to sue for infringement"). Furthermore, the party invoking federal jurisdiction bears the burden of establishing the elements of standing. *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 561, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). Thus, to maintain this suit for patent infringement, Freedom Wireless must set forth facts sufficient to establish its ownership of the patents at issue. Because this Court rules that Freedom Wireless has satisfied this burden, BCGI's motion for summary judgment is denied.

It is undisputed that Mr. Harned and Mr. Fougnies conceived of the invention claimed in the two patents at issue sometime between late 1993 and early 1994, when Mr. Harned was working for Orbital

Sciences Corporation/ Space Data Division ("Orbital"). As part of his employment contract with Orbital, Mr. Harned had agreed to the following covenant:

> The Employee agrees that all inventions, innovations or improvements in the Company's methods of conducting business (including new contributions, improvements and discoveries) conceived or made by the Employee during his or her employment period belong to the Company. The Employee will promptly disclose such inventions, innovations or improvements to the Company and perform all actions reasonably requested by the Company to establish and confirm such ownership, including but not limited to cooperation in connection with the Company's obtaining patent and/or copyright protection.

BCGI argues that this agreement conveyed to Orbital an expectant interest in Mr. Harned's invention, which vested as a matter of law into full legal ownership at the moment Mr. Harned first conceived of his invention. Consequently, BCGI argues that Orbital is the owner of the patents at issue and that Mr. Harned's subsequent attempt to assign the invention to Freedom Wireless' predecessor company was a legal nullity.

■ The Court disagrees with BCGI's contention that the employment contract between Mr. Harned and Orbital created a valid assignment of Mr. Harned's invention. First, as a matter of contractual interpretation, this Court holds that under the terms of the contract Mr. Harned was only obligated to assign his rights to an invention if that invention was related to Orbital's methods of conducting business. This is because the agreement only applies to "inventions, innovations or improvements in the Company's methods of conducting business (including new contributions, improvements and discoveries)." Under ordinary rules of English usage, the prepositional phrase "in the Company's methods of conducting business" modifies all three nouns in the preceding series. *See, e.g., Pandol Bros., Inc. v. Indemnity Marine Assur. Co.,* 1996 WL 498912, at *2, 97 F.3d 1460 (9th Cir.1996) (unpublished) ("Giving this paragraph its most natural meaning, the prepositional phrase ... modifies all that comes before it ... [particularly where] no commas set off this phrase from what precedes it."). Thus, under the agreement, Mr. Harned was only under an obligation to assign his ownership to any "invention ... in the Company's methods of conducting business" that was conceived of by him during his period of employment with Orbital.

■ This interpretation of the contract as covering only inventions related to Orbital's methods of conducting business is particularly appropriate in light of the strong public policy discouraging contracts that create an unreasonable restraint on trade. For over one hundred years, courts have looked skeptically upon employment contracts that require an employee to assign his inventions to his employer. *See, e.g., Bates Mach. Co. v. Bates,* 192 Ill. 138, 145, 61 N.E. 518 (1901); *Guth v. Minn. Min. & Mfg. Co.,* 72 F.2d 385, 388 (7th Cir.1934); *Ingersoll–Rand Co. v. Ciavatta,* 110 N.J. 609, 624–26, 542 A.2d 879 (1988). Where such contracts are open-ended with respect to time limit or subject matter, they may be considered unenforceable as against public policy. *See Ingersoll–Rand,* 110 N.J. at 624, 542 A.2d 879 ("Courts, however, will not enforce invention assignment contracts that unreasonably obligate an employee in each and every instance to transfer the ownership of the employee's invention to the employer."); *see also* Cal. Lab.Code § 2870 (2002) (providing that invention assignment contracts that are open-ended with respect to time and subject matter are against public policy and

therefore unenforceable). Thus, public policy supports an interpretation of the invention assignment contract between Mr. Harned and Orbital that limits the agreement to inventions that are within the subject matter of the employment relationship.

■ Having first held that the contract between Orbital and Mr. Harned is limited to inventions relating to Orbital's methods of conducting business, this Court further holds that Mr. Harned was not required to assign the invention claimed in the patents at issue in this case because the invention did not relate to Orbital's methods of conducting business. The two patents at issue in this case are for prepaid wireless telephone billing, which is a form of wireless telephone communications that allows users to pay in advance for cellular telephone service. *See Freedom Wireless, Inc. v. Boston Communications Group, Inc.,* 198 F.Supp.2d 11 (D.Mass.2002) (describing the technology of prepaid wireless billing). In its most generic embodiment, prepaid wireless billing utilizes some form of electronic signaling in conjunction with a computer database to charge a customer's prepaid account every time a cellular call is made or received. On the other hand, Orbital is a space technology company that develops satellite-based and space-based services, including personal satellite navigation services and guidance systems for rockets. Prepaid wireless billing does not relate to the methods of conducting a business dedicated to developing satellite-base and rocket-based services. Thus, because the invention claimed in the patents at issue is not sufficiently related to Orbital's methods of conducting business, Mr. Harned was not obligated to assign his rights to Orbital.

■■ Finally, in addition to the subject matter limitation contained in the invention assignment agreement between Orbital and Mr. Harned, there is another reason why Freedom Wireless does not lack standing to sue for patent infringement. Freedom Wireless does not lack standing to sue because the invention assignment contract in this case was merely an agreement by Mr. Harned to assign his invention to Orbital at some point in the future and not an actual present assignment. *Arachnid, Inc. v. Merit Indus., Inc.,* 939 F.2d 1574, 1580–81 (Fed.Cir.1991). In order for a pre-invention assignment contract to create a present assignment of an expectant interest in an invention that automatically vests by operation of law into an actual assignment upon conception, the contract must contain words of present conveyance and must require "no further act once an invention [comes] into being." *Filmtec,* 939 F.2d at 1570. *Compare id.* (inventor "agrees to grant and **does hereby grant** ... the full and entire domestic right, title and interest"), *and Imatec, Ltd. v. Apple Computer, Inc.,* 81 F.Supp.2d 471, 478 (S.D.N.Y.2000) (inventor "agree[s] to assign, **and hereby do[es] assign,** ... all my rights to invention"), *with Arachnid,* 939 F.2d at 1576 (inventor agrees that "any inventions ... shall be the property of the CLIENT and all rights thereto will be assigned by [inventor]"). The agreement in this case, which states that "all inventions belong ... to the Company," and which requires future acts by the inventor such as "disclos[ing]" the invention and "perform[ing]" actions necessary to establish ownership, is not sufficient to convey legal title to the invention. *Arachnid,* 939 F.2d at 1581 ("The *legal* title to an invention can pass to another only by a conveyance.") (quoting G. Curtis, *A Treatise on the Law of Patents* § 170 (4th ed. 1873)). Thus, even if the contract between Mr. Harned and Orbital covered the invention claimed in the patents at issue, Freedom Wireless would still have legal title to the patent and standing to sue in this case because the employment contract did not

contain terms sufficient to convey legal title to Orbital. *Arachnid,* 939 F.2d at 1581.

Because this Court rules that Freedom Wireless is the legal owner of the patents at issue in this case, BCGI's motion for summary judgment based on lack of standing is hereby denied.